# IN THE SUPREME COURT OF IOWA

No. 11–1065

Filed April 26, 2013

**STATE OF IOWA,**

Appellee,

vs.

**TOMMY TYLER, JR.,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, William A. Price (suppression motion) and Scott D. Rosenberg (trial), Judges.

Defendant appeals from the district court's denial of his motion to suppress, which was affirmed by the court of appeals. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

Gary D. Dickey of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, John P. Sarcone, County Attorney, and David M. Porter, Assistant County Attorney, for appellee.

**ZAGER, Justice**.

In this case, we are asked to determine whether law enforcement had probable cause to believe that an equipment violation was occurring under Iowa Code section 321.37(3), which prohibits an owner of a motor vehicle from placing a frame around a license plate that obstructs the view of the plate. If probable cause is not present to justify the stop, the State asks us to decide whether reasonable suspicion of the equipment violation is sufficient to support a traffic stop.

The district court denied the motion to suppress, and Tyler was convicted of operating a motor vehicle while intoxicated (OWI), second offense, in violation of Iowa Code section 321J.2 (2009). Tyler appeals, arguing the district court erred in denying his motion to suppress. We transferred the case to the court of appeals, which affirmed. We granted further review. For the reasons expressed below, we vacate the decision of the court of appeals, reverse the judgment of the district court, and remand for further proceedings.

## I. Background Facts and Prior Proceedings.

On October 13, 2010, at approximately 2:00 a.m., Johnston Police Officer Brad Lowe was sitting stationary in his marked patrol car in the parking lot of the Dragon Car Wash on Merle Hay Road. Officer Lowe observed Tommy Tyler's white Cadillac Escalade turn northbound onto Merle Hay Road from Johnson Drive, past Officer Lowe's position. Officer Lowe testified that as Tyler's vehicle approached his position, "it appeared the vehicle had a tinted license plate cover on the front of the license plate." As the vehicle pulled past, Officer Lowe testified, "I then pulled out behind the vehicle and also noticed that it had a license plate cover obstructing the view of the plate on the rear as well." Officer Lowe recognized the vehicle as the same one he had attempted to stop two

days earlier, also because of his concern regarding "tinted" license plate covers.

Officer Lowe testified that because he found it difficult to run the license plate on the vehicle, he initiated the traffic stop, which was captured on videotape from his squad car. Prior to making contact with the driver, however, Officer Lowe was able to view all of the numbers and letters printed on the rear license plate, saw the "Iowa" printed at the top of the license plate, observed the county displayed on the bottom of the plate, and had a full view of the registration sticker. Based upon these observations, Officer Lowe was able to quickly and accurately call the plate information into dispatch.

After making initial contact with Tyler and advising him of the reason for the stop, Officer Lowe detected an odor of an alcoholic beverage coming from within the vehicle and noted that Tyler's speech was slow. Based on these observations, Officer Lowe initiated an OWI investigation. This investigation culminated in a breathalyzer test indicating Tyler had a blood alcohol content of .147.

Tyler filed a motion to suppress the evidence discovered as a result of the stop. He argued the stop violated the Fourth Amendment of the United States Constitution, and article I, section 8 of the Iowa Constitution, both of which prohibit unreasonable search and seizure. Tyler argued that Officer Lowe lacked either reasonable suspicion or probable cause to justify the stop.

Evidence admitted at the suppression hearing, including the in-car videotape, photographs, and witness testimony, demonstrated that both the rear and front license plate covers were clear rather than tinted. The videotape of the stop shows Officer Lowe was able to read the license plate in order to provide the information to his dispatcher as both

vehicles were coming to a stop. Officer Lowe indicated that he had not attempted to read and call in the license plate prior to that point. He did, however, testify that the license plate was "blurred" and that he could not read the plate when he had initially turned on his lights.

The district court denied Tyler's motion to suppress. After a bench trial, Tyler was convicted of OWI, second offense. Tyler appealed, arguing the district court erred in failing to suppress the evidence. The court of appeals affirmed the district court's ruling. We granted further review.

## II. Standard of Review.

Tyler asserts his state and federal constitutional rights to be free from unreasonable search and seizure were violated. Because of the constitutional dimensions of these claims, our review is de novo. *State v. Pals*, 805 N.W.2d 767, 771 (Iowa 2011). A de novo review constitutes "an independent evaluation of the totality of the circumstances as shown by the entire record." *Id.* (citation and internal quotation marks omitted). We give "deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses, but [we are] not bound by such findings." *Id.* (citation and internal quotation marks omitted).

## III. Discussion and Analysis.

**A. Unreasonable Search and Seizure.** Both the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution prohibit unreasonable searches and seizures by the government. *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997) ("The Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution protect individuals against unreasonable searches and seizures by government officials."). As we

have consistently stated, "[W]e jealously protect this court's authority to follow an independent approach [to evaluate claims made] under our state constitution." *Pals*, 805 N.W.2d at 771. Where a party raises both state and federal constitutional claims but does not argue that a standard independent of the federal approach should be employed under the state constitution, we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent. *State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009). Because Tyler has not proposed a standard for interpreting our search and seizure provisions under the Iowa Constitution differently from its federal constitutional counterpart, we will apply the general standards as outlined by the United States Supreme Court for addressing a search and seizure challenge under the Iowa Constitution. *See id.*

The United States Supreme Court has considered the constitutionality of traffic stops under the Fourth Amendment in a number of cases. A traffic stop is unquestionably a seizure under the Fourth Amendment. *Berkemer v. McCarty*, 468 U.S. 420, 436–37, 104 S. Ct. 3138, 3148, 82 L. Ed. 2d 317, 332–33 (1984); *State v. Heminover*, 619 N.W.2d 353, 357 (2000) ("When the police stop a car and temporarily detain an individual, the temporary detention is a 'seizure' within the meaning of the Fourth Amendment."), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

Under the Fourth Amendment, the United States Supreme Court has recognized that allowing law enforcement unbridled discretion in stopping vehicles " 'would invite intrusions upon constitutionally guaranteed rights.' " *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S. Ct. 1391, 1400, 59 L. Ed. 2d 660, 672 (1979) (quoting *Terry v. Ohio*, 392

U.S. 1, 22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889, 906 (1968)). When there is no probable cause or reasonable suspicion for a stop, an officer has the "kind of standardless and unconstrained discretion [that] is the evil the Court has discerned when in previous cases it has insisted that the discretion of the official in the field be circumscribed, at least to some extent." *Id.* Moreover, the Court recognized that individuals frequently spend significant time traveling in automobiles and must be entitled to protection against unreasonable searches and seizures when traveling. *Id.* at 662–63, 99 S. Ct at 1401, 59 L. Ed. 2d at 673. "Were the individual subject to unfettered governmental intrusion every time [she or] he entered an automobile, the security guaranteed by the Fourth Amendment would be seriously circumscribed." *Id.*

**B. Bases for Traffic Stops.** We have considered the scope of article I, section 8 of the Iowa Constitution in a traffic stop context. In *State v. Tague*, we held that briefly crossing the edge line on a divided roadway did not provide reasonable suspicion of intoxication to support a traffic stop or probable cause that a violation of Iowa Code section 321.297 occurred under article I, section 8. 676 N.W. 2d 197, 205–06 (Iowa 2004).

The State argues that the stop in this case may be supported under both probable cause and reasonable suspicion theories. If a traffic violation actually occurred and the officer witnessed it, the State has established probable cause. *Tague*, 676 N.W.2d at 201. A reasonable mistake of fact does not negate justification for a stop based on probable cause. *State v. Lloyd*, 701 N.W.2d 678, 680–81 (Iowa 2005).

Reasonable suspicion is a much more nebulous concept, and a standard that may or may not be appropriate to apply to smaller offenses such as traffic violations. Professor LaFave speculates that,

7

> [i]f the [U.S.] Supreme Court were to address the issue [of whether the nature of the offense being investigated is relevant to whether reasonable suspicion can justify a traffic stop], it might well be that the Court would conclude that Terry stops upon less than probable cause cannot be made with respect to all offenses, so that a goodly number of traffic offenses would not be encompassed with the Terry reasonable-suspicion standard.

Wayne R. LaFave, *The "Routine Traffic Stop" from Start to Finish: Too Much "Routine," Not Enough Fourth Amendment,* 102 Mich. L. Rev. 1843, 1851 (2004).

Indeed, our own jurisprudence notes the unsettled nature of the law regarding when reasonable suspicion justifies traffic stops. *See Pals*, 805 N.W.2d at 774 ("Federal courts are divided on the issue of whether the Fourth Amendment per se prohibits police from stopping a vehicle based only on reasonable suspicion of a completed misdemeanor or civil infraction.") Additionally, there is a school of thought that *Terry* compels a balancing test to justify the stop.[1]

Perhaps the greatest distinction between a probable cause analysis and a reasonable suspicion analysis is the purpose of the stop. Our decisions have universally held that the purpose of a *Terry* stop is to

---

[1]Professor LaFave has stated:

> [T]he [U.S. Supreme] Court characterized the Terry rationale as warrant[ing] temporary detention for questioning on less than probable cause where the public interest involved is the suppression of . . . serious crime, and has said that under Terry, seizures made on less than probable cause draw their justification from both the limited intrusions on the personal security of those detained and the substantial law enforcement interests being served. As several of the Court's other Fourth Amendment decisions illustrate, the seriousness of the offense thought to be involved bears directly upon the substantiality of the law-enforcement interest; as one member of the Court put it, the Supreme Court has never suggested that all law enforcement objectives . . . outweigh the individual interests infringed upon so as to support a stop on reasonable suspicion.

LaFave, 102 Mich. L. Rev. 1843 at 1851–52 (footnotes and internal quotation marks omitted).

investigate crime. *See, e.g., Tague*, 676 N.W.2d at 204 (noting that the police need only have reasonable suspicion to detain "for investigatory purposes"). Conversely, the purpose of a probable cause stop is to seize someone who has already committed a crime. *See, e.g., id.* at 201 ("Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it." (Citation and internal quotation marks omitted.)).

**C. Probable Cause.** We have held that "[w]hen a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist." *Tague*, 676 N.W.2d at 201; *see also United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012). However, the State bears the burden of proving by a preponderance of the evidence that the officer had probable cause to stop the motorist. *State v. Louwrens*, 792 N.W.2d 649, 651 (Iowa 2010). If the State is unable to meet its burden, all evidence obtained at the stop must be suppressed. *Id.* at 651–52. In determining whether Officer Lowe observed a violation of our traffic laws, we will "give considerable deference to the trial court's findings regarding the credibility of the witnesses," but we will not be "bound by them." *See Tague*, 676 N.W.2d at 201.

Probable cause is not the same standard as beyond a reasonable doubt. Probable cause may exist even if the officer's perception of the traffic violation was inaccurate. The existence of probable cause for a traffic stop is evaluated "from the standpoint of an objectively reasonable police officer." *Ornelas v. United States*, 517 U.S. 690, 696, 116 S. Ct. 1657, 1661–62, 134 L. Ed. 2d 911, 919 (1996). Indeed, "[t]he touchstone of the Fourth Amendment is reasonableness . . . ." *United States v.*

*Knights*, 534 U.S. 112, 118, 122 S. Ct. 587, 591, 151 L. Ed. 2d 497, 505 (2001).

Officer Lowe testified that he observed a violation of Iowa Code section 321.37(3), which states: "It is unlawful for the owner of a vehicle to place any frame around or over the registration plate which does not permit full view of all numerals and letters printed on the registration plate." Iowa Code § 321.37(3). He did not claim that he had probable cause to stop Tyler for any traffic violation such as speeding or disobeying a traffic signal. The only basis asserted by Officer Lowe for the stop was that he observed a violation of Iowa Code section 321.37(3).

Our precedent is clear that a mistake of fact may justify a traffic stop. *Lloyd*, 701 N.W.2d at 680–81; *Kinkead*, 570 N.W.2d at 101 ("We have . . . held that a mistaken basis for a stop does not necessarily render the stop invalid."); *State v. Melohn*, 516 N.W.2d 24, 25 (Iowa 1994) (holding it was reasonable for police to stop a vehicle speeding away from the vicinity of gunshots, even though the facts later showed the individual was not involved in the gunfire); *State v. Jackson*, 315 N.W.2d 766, 767 (Iowa 1982) (holding as valid an officer's stop of a vehicle for failure to display license plates, even though the officer later learned the vehicle was displaying proper temporary plates). "The . . . question is whether [the officer's] mistake was an objectively reasonable one." *Lloyd*, 701 N.W.2d at 681.

However, we have elected not to extend this permissiveness to mistakes of law, holding a mistake of law is not sufficient to justify a stop. "[E]vidence derived from a stop based on a law enforcement officer's mistake of law must be suppressed." *Louwrens*, 792 N.W.2d at 650.

We must first decide if Officer Lowe was mistaken. If he was correct as to both the facts and the law, then probable cause existed to detain Tyler, and the evidence obtained as a result of that stop is admissible. However, if we determine Officer Lowe was mistaken, we must determine whether he was mistaken as to the law or as to the facts. If he was mistaken as to the law, then probable cause based on that mistake of law cannot be asserted to justify the stop, and without further justification, the evidence obtained as a result of that stop must be suppressed. *See id.* If we determine Officer Lowe was mistaken as to the facts, we must then decide if the mistake was objectively reasonable. If the mistake was objectively reasonable, probable cause existed, and the evidence is admissible. Alternatively, if Officer Lowe's mistake of fact was not objectively reasonable, the evidence must be excluded.

1. *Mistake of Law.* Officer Lowe wrote in his police report,

> I noticed the vehicle had a tinted license plate cover on the front license plate which is in violation of Iowa Code 321.37(3) display of plates. As the vehicle passed my patrol car I observed it also had a tinted license plate cover on the rear license plate as well.

In fact, the cited Code section does *not* proscribe tinted license plate covers. Rather, it proscribes placement of any frame or cover "which does not permit full view of all numerals and letters printed on the registration plate." Iowa Code § 321.37(3). Officer Lowe's police report, standing alone, would be a mistake of law, and as such, would not allow the State to meet its burden of proof in establishing probable cause to stop Tyler's vehicle.

However, during the course of the suppression hearing, the State offered various alternative reasons for why the stop was justified. We have held that the State is *not* limited to the reasons stated by the

investigating officer in determining whether either probable cause or reasonable suspicion existed for the stop. *Heminover*, 619 N.W.2d at 357.

Here, none of the reasons advanced by the State support a finding that Tyler's plates violated Iowa law, and no testimony or evidence was introduced as an alternative reason for Tyler's seizure. Officer Lowe told Tyler during the stop that he had pulled him over because of tinted license plates. Tinted license plates are not a violation of Iowa law, and the State does not contend otherwise. *See* Iowa Code § 321.37(3).

Officer Lowe also seems to conflate the requirements of Iowa Code section 321.37(3) with the requirements of Iowa Code section 321.388.[2] During his testimony at the suppression hearing, Officer Lowe testified that "a license plate must be clearly legible from a distance of 50 feet." None of our cases have interpreted section 321.388, but the court of appeals has held that "if the deputy had testified that he observed the plate from something that would approximate fifty feet, and it did not appear to be illuminated so as to be legible, we would likely find the stop reasonable." *State v. Reisetter*, 747 N.W.2d 792, 794 (Iowa Ct. App. 2008). This Code section requires illumination sufficient to render the license plate clearly legible. Officer Lowe does not contend the illumination of the plate was insufficient. In fact, the evidence in the record is clearly to the contrary. The fifty-foot distance is only relevant when applied to the question of adequate illumination, indicating another mistake of law.

---

[2]Iowa Code section 321.388, entitled "Illuminating Plates," provides "[e]ither the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear."

Finally, the State advances a theory in its brief suggesting that "the plate cover could have had a light coat of dust, mud or snow so as to render Tyler's plate unreadable from an angle or from a distance," in violation of Iowa Code section 321.38.[3]   This argument was not raised below and, thus, was not considered by the district court.  Generally, we will only review an issue raised on appeal if it was first presented to and ruled on by the district court.  *State v. Derby*, 800 N.W.2d 52, 60 (Iowa 2011).  Nonetheless, no evidence was presented suggesting that any of these theories regarding possible obstruction of the plate may have been true.  Again, the evidence is to the contrary as the videotape shows no foreign materials on the plate.  It is not Tyler's responsibility to prove a negative—that there was no conceivable reason for a stop.

Recognizing that Officer Lowe's understanding of the law regarding license plate covers was flawed, the State attempted to justify the stop with other laws, specifically Iowa Code sections 321.388 and 321.38.  Under the facts of this case, neither of these other laws has been shown by the State to provide Officer Lowe with probable cause to justify his seizure of Tyler.  Consequently, we conclude that a mistake of law occurred.  Unless the State can demonstrate alternate justification for the stop, any evidence derived from the stop must be suppressed.  *See Louwrens*, 792 N.W.2d at 650.

---

[3]Section 321.38, in pertinent part, provides:

**321.38.  Plates, method of attaching—imitations prohibited.**
Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be maintained free from foreign materials and in a condition to be clearly legible.

2. *Mistake of fact.* Tyler presented significant evidence at the suppression hearing, and then again at his trial, to indicate his license plate covers were clear and would "permit full view of all numerals and letters printed on the registration plate." Tyler presented testimony from a private investigator, who attempted to recreate the situation the officer described, and concluded that Tyler's license plate cover did not obscure the view of the license plate. The district court found this testimony was "not persuasive," as it occurred "under different conditions and lighting." The district court did not, however, enumerate these differences. The test occurred at the same place as the initial incident. Tyler testified the lighting was the same, and Officer Lowe declined to offer an opinion on whether the lighting was the same. The re-creation took place earlier in the night than the 2:00 a.m. stop, but it was dark at both of these times. Officer Lowe did not suggest that weather conditions or dirt on the plate cover inhibited his ability to read the plate. The test took place approximately three weeks after the incident, so the season was the same. Neither the State nor the district court articulated specific reasons why the test should be given no credibility. Upon our de novo review, we find the re-creation probative as to what Officer Lowe likely saw.

Additionally, Tyler introduced photographs of his license plate covers and a videotape of the stop on that evening. When Officer Lowe is following Tyler, the video is so grainy that it is difficult to see anything at all. Thus, it is not probative of what Officer Lowe saw. However, when Tyler pulled over in a parking lot, Officer Lowe was able to read the license plate accurately and completely to the dispatcher without hesitation.

No evidence supports an objectively reasonable basis for believing that Tyler's plates were not in conformity with all of Iowa's traffic laws. Despite acknowledging that he was a skilled police report writer, and further acknowledging that he understood the importance of the police report to the criminal justice process, Officer Lowe did not indicate in his report that his view of the license plate was obscured.

Officer Lowe admitted he had no difficulty reading the license plate to dispatch prior to actually stopping Tyler's vehicle as Tyler was slowing down. The videotape of the stop confirms he was able to read the plate without difficulty. In his testimony, Officer Lowe stated that the license plate was "blurred" and that the "cover creates a glare at times," but did not indicate why he thought the cover itself created any blurring or glare, as opposed to the normal glare that would come from an uncovered white license plate or any of the other numerous colored license plates now offered by the Iowa Department of Transportation. The condition of Tyler's car, as seen in the videotape, is very clean. Based on the photographs, the uncontroverted testimony of the defense witnesses, and the observable cleanliness of the vehicle's exterior and license plate as shown in the videotape, we find no objectively reasonable fact that would support a finding that the license plates were in any way obstructed from Officer Lowe's view. In making credibility determinations, we examine extrinsic evidence for contradictions to that witness's testimony. *Mendoza*, 677 F.3d at 827. We also examine a witness's testimony for internal inconsistencies in making credibility determinations. *Id.*

The officer's testimony that there was a "glare" and that the plates were occasionally "blurry" does not indicate any difference between Tyler's covered plate and an uncovered license plate. If we were to hold that an officer's mistaken conclusion that any plate that gave off a glare

or was blurry in the intermittent brightness of street lights at 2:00 in the morning had an illegal cover, we would be giving law enforcement officers carte blanche to pull over any motorist at any time, as sunlight could also cause glaring and blurriness on an uncovered plate. We decline to extend the authority of law enforcement officers to execute traffic stops based on the facts as described in this case.

Officer Lowe admits he specifically targeted Tyler's vehicle, as he had attempted to stop it a day or two earlier, ostensibly for the same tinted license plate cover issue. Tyler's friend, whose vehicle had identical license plate covers, testified that she had passed by Officer Lowe's position immediately before Tyler passed by it. Yet, Officer Lowe did not stop her. This gives rise to the reasonable conclusion, upon our de novo review, that Officer Lowe may have targeted Tyler's car for a reason other than an obscured license plate cover.[4] Based on the above analysis, we conclude that probable cause is lacking under both the Fourth Amendment and article I, section 8 of the Iowa Constitution.

**D. Reasonable Suspicion.** Having found no probable cause, the State urges us to consider whether reasonable suspicion of the equipment violation provides a sufficient basis to justify the stop. In its review of the district court's ruling on the motion to suppress, the court of appeals suggested that reasonable suspicion may not be enough to justify a stop such as this, based on dicta in *Pals*. In *Pals*, we stated, "Federal courts are divided on the issue of whether the Fourth Amendment per se prohibits police from stopping a vehicle based only on

---

[4]Tyler, who is black, argues he was the victim of racial profiling. We need not reach this argument on appeal. However, we do agree with Tyler that the possibility for racial profiling requires us to carefully review the objective basis for asserted justifications behind traffic stops.

reasonable suspicion of a completed misdemeanor or civil infraction." 805 N.W.2d at 774.[5] However, neither *Pals* nor the case at bar involved a *completed* misdemeanor. Rather, *Pals* dealt with an *ongoing* civil infraction. *Id.* Here, Tyler was ostensibly stopped in order to investigate an *ongoing* traffic offense. Officer Lowe claims to have observed an ongoing violation of Iowa law—operation of a motor vehicle with an obscured license plate.

In *Terry*, the United States Supreme Court found that law enforcement could stop citizens if swift action was required, "predicated upon the on-the-spot observations of the officer on the beat." 392 U.S. at 20, 88 S. Ct. at 1879, 20 L. Ed. 2d at 905. In deciding whether a stop is appropriate based on reasonable suspicion, a court must engage in a balancing test—balancing the governmental interest advanced by the seizure against the "intrusion upon the constitutionally protected interests of the private citizen" to be free from unnecessary seizure. *Id.* at 21, 88 S. Ct. at 1879, 20 L.Ed.2d at 905. "Under *Terry*, police may stop a moving automobile in the absence of probable cause to investigate a reasonable suspicion that its occupants are involved in criminal activity." *Pals,* 805 N.W.2d at 774.

We have described a stop based on reasonable suspicion under *Terry* as an "investigatory stop." *E.g., State v. Vance,* 790 N.W.2d 775, 781 (Iowa 2010); *Tague*, 676 N.W.2d at 204. Professor LaFave has noted that the purpose of a *Terry* stop is "to allow immediate investigation through temporarily maintaining the *status quo*. If reasonable suspicion exists, but a stop cannot further the purpose behind allowing the stop,

---

[5]This contested issue, in fact, is the subject of much legal scholarship. *See generally* Sameer Bajaj, *Policing the Fourth Amendment: The Constitutionality of Warrantless Investigatory Stops for Past Misdemeanors*, 109 Colum. L. Rev. 309 (2009).

the investigative goal as it were, it cannot be a valid stop." 4 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 9.3, at 482 (5th ed. 2012) (citation and internal quotation marks omitted). The *purpose* of a *Terry* stop, then, is to *investigate* a crime.

> [I]f the officer has a legitimate expectation of investigatory results, the existence of reasonable suspicion will allow the stop—if the officer has no such expectations of learning additional relevant information concerning the suspected criminal activity, the stop cannot be constitutionally permitted on the basis of mere suspicion.

*Id.* at 4.

We have said that " '[t]he principal function of an investigatory stop is to resolve the ambiguity as to whether criminal activity is afoot.' " *Vance*, 790 N.W.2d at 780 (quoting *State v. Richardson*, 501 N.W.2d 495, 497 (Iowa 1993)). Though Officer Lowe testified he initially believed the plate to be obstructed due to it being tinted, he also testified that he was able to clearly read and relay the plate information to dispatch as soon as he attempted to do so. Once this ambiguity was resolved, there was no longer a need for further investigation. The stop, then, was *not* for the purpose of investigating an ongoing crime. If the State wants to rely on reasonable suspicion as justification for this stop, it must show that Officer Lowe was attempting to actively investigate whether a crime was occurring and that seizure was required in order to accomplish that purpose. The State did *not* make that showing. As a result, the State has not shown reasonable suspicion to justify the stop either under the Fourth Amendment or article I, section 8 of the Iowa Constitution. Because of our conclusion that reasonable suspicion was not present, we need not resolve the question of whether reasonable suspicion of a completed misdemeanor may support a stop under the Fourth Amendment or Article I, section 8 of the Iowa Constitution.

### IV. Conclusion and Disposition.

Based on our de novo review, we find Officer Lowe did not have either probable cause or reasonable suspicion to stop Tyler's vehicle. This stop violated Tyler's rights as guaranteed by both the Fourth Amendment of the United States Constitution, and article I, section 8 of the Iowa Constitution. Thus, all evidence obtained in the subsequent stop is inadmissible. We vacate the decision of the court of appeals, reverse the trial court's ruling denying the motion to suppress, and remand the case for further proceedings consistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

All justices concur. Appel, J., concurs specially. Mansfield, J., concurs specially, in which Waterman, J., joins.

**APPEL, Justice (concurring specially).**

I join in the majority opinion. We have repeatedly stated when a party makes claims under parallel provisions of both the Iowa and Federal Constitutions but does not suggest an independent state constitutional standard, we apply the federal standards, but do not necessarily apply them in the same way as the United States Supreme Court. *See, e.g., State v. Becker*, 818 N.W.2d 135, 150 (Iowa 2012) ("Even where a party has not provided a substantive standard independent of federal law, we reserve the right to apply the standard presented by the party in a fashion different than the federal cases."); *NextEra Energy Res. LLC v. Iowa Utils. Bd.*, 815 N.W.2d 30, 45 (Iowa 2012) ("Even in cases where a party has not suggested that our approach under the Iowa Constitution should be different from that under the Federal Constitution, we reserve the right to apply the standard in a fashion at variance with federal cases under the Iowa Constitution."); *State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012) (reiterating that we apply a more rigorous cruel and unusual punishment analysis under the Iowa Constitution than a federal court would under the United States Constitution); *State v. Pals*, 805 N.W.2d 767, 771–72 (Iowa 2011) ("Even where a party has not advanced a different standard for interpreting a state constitutional provision, we may apply the standard more stringently than federal case law."); *State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009) ("[W]e do not necessarily apply the federal standards in the same way as the United States Supreme Court."); *Varnum v. Brien*, 763 N.W.2d 862, 878 n.6 ("[W]e have jealously guarded our right to 'employ a different analytical framework' under the state equal protection clause as well as to independently apply the federally formulated

principles." (citation omitted)); *In re S.A.J.B.*, 679 N.W.2d 645, 648 (Iowa 2004) ("In analyzing claims under Iowa Equal Protection Clause, we independently apply federal principles."); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6 (Iowa 2004) ("That brings us to the alternative manner in which the court might exercise its obligation to rule upon the state constitutional claim: by applying federal principles independently."). Reserving the right to applying federal standards in a manner different than that of the United States Supreme Court as requested by the parties is not "freelancing," but performing our duty under the Iowa Constitution. *See State v. Baldon*, ___ N.W.2d. ___, ___, 2013 WL 1694553, at *27 (Appel, J., concurring). In this case, however, I agree with the majority in reaching the same result under both the Iowa and United States Constitutions.

**MANSFIELD, Justice (concurring specially).**

I join the court's well-reasoned opinion. This case can be, and as a practical matter has been, decided under Fourth Amendment caselaw. When a party does not advocate a separate interpretation of article I, section 8, but simply argues federal constitutional precedent, we should not be freelancing under the Iowa Constitution without the benefit of an adversarial presentation. *See State v. Baldon*, ___ N.W.2d ___, ___, 2013 WL 1694553 at \*46 n.46 (Iowa 2013) (Mansfield, J., dissenting); *see also State v. Lowe*, 812 N.W.2d 554, 566 (Iowa 2012) (" '[W]e generally decline to consider an independent state constitutional standard based upon a mere citation to the applicable state constitutional provision.' " (quoting *State v. Effler*, 769 N.W.2d 880, 895 (Iowa 2009) (Appel, J., specially concurring))). Here the court has not departed from federal constitutional precedent in the absence of separate Iowa constitutional briefing. Instead, it has applied federal and state search and seizure provisions consistently, and in my view correctly.

Waterman, J., joins this special concurrence.