# IN THE COURT OF APPEALS OF IOWA

No. 13-0681
Filed May 14, 2014

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**ISAAC ANDREW BALDON,**
     Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Bobbi M. Alpers, Judge.


A defendant appeals following his conviction on drug-related offenses.
**AFFIRMED.**


Mark C. Smith, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Isaac A. Baldon III, Coralville, pro se appellant.

Thomas J. Miller, Attorney General, Bridget Chambers, Assistant Attorney General, Michael J. Walton, County Attorney, and Kelly G. Cunningham, Assistant County Attorney, for appellee.


Considered by Danilson, C.J., and Vaitheswaran and Mullins, JJ.

**MULLINS, J.**

Isaac Baldon appeals following his convictions for possession of marijuana with intent to distribute and failure to affix a drug tax stamp, both class "D" felonies and both enhanced as Baldon was a habitual offender. *See* Iowa Code §§ 124.401(1)(d), 124.204(4)(m), 124.411, 453B.1(3)(b), 453B.3, 453B.7(1), 452B.12, 902.8 (2011). On appeal he asserts his attorney was ineffective in failing to object to the testimony of a police officer, who testified as a drug expert on behalf of the State. He claims the court should not have overruled his motion to suppress the evidence and his attorney was ineffective in failing to file a timely motion. Finally, he claims the court applied the wrong legal standard when rejecting his motion for judgment of acquittal. Because we conclude the record contains no error of the district court and counsel was not ineffective, we affirm his conviction and sentence.

**I. Background Facts and Proceedings.**

Officer Delaere pulled Baldon over for speeding on July 30, 2012. When she approached the car, Officer Delaere smelled the odor of strong air freshener coming from the car. She obtained Baldon's license and registration information, and returned to her patrol car to run the information and issue Baldon a warning for speeding. When she returned to Baldon's car to return his paperwork, the air freshener smell had dissipated, and she detected the odor of fresh marijuana emanating from the car. She inquired of Baldon for an explanation for the smell. Based on the smell, she decided to search the vehicle and detained Baldon while she called for backup. In the center console of the car, officers found six baggies

of marijuana of varying weights, a scale, and multiple empty baggies. From Baldon's person, the officers recovered two cellphones and $645 in cash in denominations of 20s, 10s, 5s, and 1s.

Just prior to trial, Baldon filed a pro se motion to suppress. His attorney requested a continuance in order to prepare to argue the motion and due to the fact a police witness was unavailable. In addition, it had been recently discovered the video of the traffic stop was no longer available. The court denied the motion to continue, and the case proceeded to a jury trial on March 4, 2013. In addition to calling Officer Delaere to testify as to the facts of the case, the State called Sergeant Proehl as an expert in narcotics crimes. He described his experience investigating drug trafficking, drug packaging, and dealing activities.

After the close of evidence, Baldon's attorney asserted the motion to suppress, which the court denied on the merits stating, "[T]he Court finds that the summary of case law as offered by [the prosecutor] is persuasive and that this motion to suppress must be denied for the reasons as argued by the State at this time." Defense counsel also moved "for a directed verdict of acquittal" asserting there was no indication Baldon knew the marijuana was in the car or that he was in possession of it. The district court denied the motion.

The jury found Baldon guilty as charged, and Baldon stipulated to his prior criminal history. He was subsequently sentenced to two terms of imprisonment of fifteen years each to be served concurrently, including various fines, costs, and surcharges. He appeals.

## II. Scope and Standards of Review.

We review claims of ineffective assistance of counsel de novo. *State v. Merrett*, 842 N.W.2d 266, 273 (Iowa 2014). To show ineffective assistance, Baldon must prove counsel failed to perform an essential duty and he suffered prejudice as a result. *See State v. Null*, 836 N.W.2d 41, 48 (Iowa 2013). Both elements must be proven by a preponderance of the evidence. *Id.*

Our review of a district court's ruling on a motion to suppress is likewise de novo as it implicates constitutional rights. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013). We give deference to the factual findings of the district court due to its ability to evaluate the credibility of witnesses, but we are not bound by the findings. *Id.*

Finally, we review sufficiency-of-the-evidence challenges for correction of errors at law, and we will uphold the verdict if substantial evidence in the record supports it when viewed in the light most favorable to the State. *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006).

## III. Expert Testimony.

On appeal, Baldon asserts the following sections of Sergeant Proehl's direct examination testimony were improper and defense counsel should have objected to them:

> Q. . . . What is significant about that digital scale? A. It was found with the packaging, the marijuana, and also there is—appears to have marijuana residue all over the scale.
> Q. Which would tell you what? A. It's being used to package marijuana.
> Q. Is that a tool that you associate with distribution or use? A. It can be used for both, but in this case with these facts it would be the distribution.

He further testified:

> Q. Now, when you look at all of the variables in this particular case, in your expert opinion, what do those variables indicate? What are they indicative of? Take us through each of these variables and analyze them. A. Like I mentioned before, with the different weights of marijuana it would be a different customer base asking for different amounts for sale. The scale would indicate that there's packaging going on inside the vehicle. The baggies are right there as well. The actual larger amount, the quarter pound, not sure if that's for sale or if that would be used for a supply to make the smaller quantities. There was probably definitely more marijuana out there somewhere.
>     Q. And the money, of course, then, would be a reflection of what had already occurred? A. Proceeds from the sale of narcotics.
>     Q. Okay. Since you have product, you have the various quantities that are prepackaged, you have got the cell phones, you have got the plastic baggies, and then you have got an increment of money, where in that cycle would you put this particular dealer? A. Still has supply, so he's still in business.
>     Q. In your expert opinion, what is this evidence indicative of? A. Marijuana trafficking.

Baldon claims Sergeant Proehl went too far in his testimony by stating that he was dealing drugs, was in the middle of a dealing "cycle" when he was arrested, and was involved in trafficking marijuana. He also challenges the expert's statement that "[t]here was probably definitely more marijuana out there somewhere." Baldon asserts this was inadmissible testimony as it passed on his guilt rather than just aiding the jury in understanding a fact in issue. He asserts the testimony went to the heart of the case and left nothing for the jury to decide.

Expert opinion is admissible to assist the trier of fact to understand the evidence or determine a fact in issue. *State v. Dinkins*, 553 N.W.2d 339, 341 (Iowa Ct. App. 1996). The expert testimony can even embrace an ultimate issue so long as the expert does not express a direct opinion on the guilty or innocence

of the defendant—that is the exclusive function of the jury. *Id.* There is often a fine line between inadmissible and admissible testimony of expert witnesses especially in cases where the fighting issue is whether the accused possessed drugs with the intent to sell. *Id.* It is not proper for an expert to give an opinion that the defendant had the intent to deliver the drugs based on the facts, but the expert may express an opinion that the facts of the case fit a profile of a person who sells drugs. *Id.* at 341–42. So long as the opinion does not directly relate to the defendant but is instead an opinion that the evidence in the case is consistent with selling drugs, the testimony is properly admitted. *Id.* at 342; *but see State v. Vesey*, 482 N.W.2d 165, 168 (Iowa Ct. App. 1991) (concluding the testimony from the expert that "there was heroin being dealt from this residence" was improper because it was "an opinion as to the ultimate fact of an element of the crime with which the defendant was charged").

Sergeant Proehl testified regarding his expertise that the digital scale was being used to package marijuana because it was found with packaging material and marijuana, and the scale also had marijuana residue on it. This was not improper testimony as Sergeant Proehl did not say, nor was he asked, whether Baldon was using the scale to package marijuana for sale. He was simply asked the significance of the scale based on his expertise. Likewise, Sergeant Proehl's testimony in response to the question of what the variables in this case tell him was proper. He analyzed the facts present: the scale, the baggies, the varying weights of packaged marijuana, and the money, and he concluded it was indicative of "marijuana trafficking" based on his expertise.

In addition, even if the attorney should have objected to Proehl's statements that "[t]here was probably definitely more marijuana out there somewhere" and that this particular dealer "[s]till has supply, so he's still in business," we conclude Baldon cannot sustain his ineffective-assistance claim because of the overwhelming evidence of his guilt. He cannot prove a reasonable likelihood of a different outcome had counsel objected to the testimony and the testimony had been excluded. *See Vesey*, 482 N.W.2d at 168 (finding that the defendant had not demonstrated a reasonable probability he would have been acquitted had the evidence been excluded as improper opinion testimony).

Baldon does not challenge Officer Delaere's testimony, which mirrors a lot of Sergeant Proehl's testimony. When Officer Delaere informed Baldon that she smelled marijuana and advised him she was going to search, he became very fidgety, nervous, and reached several times toward the direction of the center console. A large amount of marijuana was found in the center console of a vehicle recently registered to Baldon. Officer Delaere observed "shake"—little particles or flakes of marijuana that fall off when it is handled—on the floor of the driver's side of the vehicle. The marijuana was packaged in various weights that corresponded to standard weights for sale. The drugs were found with a scale and packaging material. Officer Delaere testified the baggies found were consistent with packing material for marijuana. Baldon was found with two cellphones and a large amount of cash in small denominations, which, to Officer

Delaere, indicated the individual would be selling marijuana. Because Baldon cannot prove prejudice, his ineffective-assistance claim fails.

## IV. Motion to Suppress.

Next, Baldon claims the district court should have granted his motion to suppress the evidence and his attorney was ineffective in not timely filing the motion.[1] Baldon asserts Officer Delaere did not have probable cause to search his car, and therefore, the court should have granted his motion to suppress. In support of his claim, he points to the alleged "inconsistencies" in Officer Delaere's testimony, specifically that she was not sure whether Baldon left his window down when she returned to her vehicle to run his information through the computer system, why the smell of marijuana would not have dissipated with the smell of the air freshener if the window was left down, and why she asked if Baldon had been smoking marijuana in the car when she claimed she smelled raw marijuana.

Police officers may search a vehicle without a warrant when probable cause and exigent circumstances exist. *State v. Eubanks*, 355 N.W.2d 57, 59 (Iowa 1984). When an officer smells marijuana emanating from a vehicle, it gives the officer probable cause to search that vehicle. *Id.* (noting the officer detected the odor of marijuana coming from the car and that gave the officer probable cause to search). Exigent circumstances also existed in this case as

---

[1] As the district court did not deny the motion based on untimeliness, we do not need to address Baldon's ineffective-assistance claim. If we find the court correctly denied the motion based on the motion's merits, then counsel cannot be found ineffective in failing to raise the meritless motion earlier in the proceedings. *See State v. Willis*, 696 N.W.2d 20, 24 (Iowa 2005) (finding counsel was not ineffective for failing to raise meritless issues).

the car was "movable," the driver was alerted to the suspicion of the officer, and the car's contents may never be found again if a warrant had to be obtained. *Id.*

Upon our de novo review of the record in this case, we find the court properly denied the motion to suppress as the officer had probable cause to search the vehicle and exigent circumstances existed to justify the warrantless search. We find no inconsistencies in the officer's testimony at trial, and we give deference to the district court's assessments of credibility. Because the motion was properly denied on its merits, counsel was not ineffective in failing to raise the issue within the time permitted in the rules of criminal procedure to file such a motion.

## V. Motion for Judgment of Acquittal.

Finally, Baldon asserts the court applied the wrong standard in ruling on his motion for judgment of acquittal. In denying this motion the court stated:

> A directed verdict can only be granted when there's either no dispute of material issues or the reasonable inference from the evidence leaves no dispute. If there's discrepancies in the evidence or any uncertainty in the inferences which could be drawn from the evidence, then a directed verdict should be denied. And if reasonable minds could differ on the results, the case should be submitted to the jury. Again the Court has had the advantage of hearing the evidence that has been presented in the courtroom today with regard to this criminal case and the Court finds that in this matter the Defendant has failed to meet the standard of proof that he needs in order to have his motion for directed verdict of acquittal be granted.
>
> The Court in making that conclusion has considered the evidence in a light most favorable to the State to determine whether or not it is—I'm sorry, most favorable—yeah, most favorable to the State to determine whether or not it is sufficient, and all evidence, including any contradictory evidence that has been presented to the Court in this matter has been considered. And the request for a directed verdict of acquittal is therefore denied and the matter will proceed forward for further components of the trial.

Baldon asserts the court used the summary-judgment standard rather than the motion-for-judgment-of-acquittal standard. Because of this error, he asks that we remand the case to the district court for it to apply the correct standard. The State asserts Baldon has waived any error on this claim as he failed to urge any specific standard in the district court when he made the motion and failed to challenge the standard announced by the court when it made its ruling. The State also claims the court did in fact apply the correct standard when you view the totality of the court's ruling, as detailed above.

We agree with the State that Baldon has not preserved error on this challenge to the court's recitation of the applicable standard for motions for judgment of acquittal. *See State v. Thompson*, 836 N.W.2d 470, 491 (Iowa 2013). Baldon's attorney described the motion to the court as a "directed verdict of acquittal" rather than a judgment of acquittal. Counsel never articulated a particular standard to be applied and failed to object or challenge the court's recitation of the standard at any time prior to this appeal. In addition, we have already found overwhelming evidence in support of Baldon's guilt, so any error the court may have made in applying the summary-judgment standard to the motion for judgment of acquittal is harmless. *See id.*

**AFFIRMED.**