# IN THE COURT OF APPEALS OF IOWA

No. 14-0223
Filed April 22, 2015

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**DAVON REASBY SAFFOLD,**
　　　　Defendant-Appellant.
_____

　　　　Appeal from the Iowa District Court for Black Hawk County, James D. Coil (motion to suppress) and Nathan A. Callahan (bench trial), District Associate Judges.


　　　　Davon Saffold appeals his judgment and sentence for driving with a barred license as a habitual offender and operating a motor vehicle while intoxicated, first offense. **AFFIRMED.**


　　　　Jeffrey L. Powell of The Law Office of Jeffrey L. Powell, Washington, for appellant.

　　　　Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Jeremy Westendorf, Assistant County Attorney, for appellee.


　　　　Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

Davon Saffold appeals his judgment and sentence for driving with a barred license as a habitual offender and operating a motor vehicle while intoxicated, first offense. He contends the district court should have granted his motion to suppress.

## I. *Background Facts and Proceedings*

Early one morning, a Black Hawk county deputy sheriff ran the license plate of a vehicle travelling in front of him and discovered the vehicle's female registered owner had a revoked license. The deputy could not see the driver or determine the driver's gender. The deputy stopped the vehicle.

For safety reasons, the deputy stood next to the post between the front and back windows. He did not get a full view of the driver until he leaned toward the window to ask for the driver's license, registration, and insurance. At that point, the deputy realized the driver was a man—Davon Saffold.

Saffold told the deputy he did not have a license because it was suspended. The deputy confirmed this assertion. After observing signs of intoxication in Saffold, he conducted field sobriety tests and a preliminary breath test, which revealed an alcohol level above the legal limit.

The State charged Saffold with driving while barred, as a habitual offender, in violation of Iowa Code sections 321.561 and 321.560 (2013), and operating while intoxicated, first offense, in violation of section 321J.2. Saffold moved to suppress the evidence obtained after the stop. He asserted the traffic stop violated his right to be free from unreasonable searches and seizures under the Fourth Amendment to the United States Constitution and article 1, section 8

of the Iowa Constitution. Following an evidentiary hearing, the district court denied the motion to suppress. The court subsequently held a stipulated bench trial on the minutes of testimony and found Saffold guilty as charged. Saffold appealed.

## II. Analysis

"A traffic stop is unquestionably a seizure under the Fourth Amendment" to the United States Constitution and under Article I section 8 of the Iowa Constitution. *State v. Tyler*, 830 N.W.2d 288, 292, 298 (Iowa 2013). An officer may make a warrantless traffic stop without running afoul of the constitutional search and seizure provisions if the officer has "reasonable suspicion, supported by specific and articulable facts, that a criminal act has occurred or is occurring." *State v. Kinkead*, 570 N.W.2d 97, 100 (Iowa 1997).

Saffold asserts, "[t]he only question before the Court is whether the Deputy retained the right to question and detain [him] *after* [] the Deputy knew he was not [a woman]." In his view, "[u]pon the Deputy's discovery that the driver was not the registered owner, the stop was no longer valid. As there was no longer reasonable suspicion to believe that the driver had a revoked license, the encounter should have ended."

The Iowa Supreme Court addressed this issue in *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010). The court held:

> [A]n officer has reasonable suspicion to initiate an investigatory stop of a vehicle to investigate whether the driver has a valid driver's license when the officer knows the registered owner of the vehicle has a suspended license, and the officer is unaware of any evidence or circumstances indicating the registered owner is not the driver of the vehicle.

The court reasoned as follows: (1) "it is reasonable for an officer to infer the registered owner of the vehicle will do the vast amount of the driving," (2) "to forbid the police from relying on such an inference to form reasonable suspicion for an investigatory stop would seriously limit an officer's ability to investigate suspension violations because there are few, if any, additional steps the officer can utilize to establish the driver of a vehicle is its registered owner," (3) "allowing a stopping officer to infer the registered owner is the driver, absent any evidence to the contrary, ensures the safety of the roadways and of law enforcement," and (4) "a majority of those jurisdictions [that have considered the issue] have adopted the standard we approve today." *Vance*, 790 N.W.2d at 781-82.

In this case, the deputy initiated the stop because he believed the female registered owner of the vehicle had a suspended license and he believed the registered owner was the driver. Only when he approached the driver's side window and asked the driver for license, registration, and insurance information did he realize the driver was a man. And, only at this point, did he learn the driver did not have a license and the driver might be intoxicated.

These facts square with the holding of *Vance*. Because the deputy did not learn the driver was someone other than the owner until he had reached the window and was questioning the driver, the reasonable suspicion he acquired on checking the registration of the owner allowed him to complete the inquiry. *See id.*[1]

---

[1] *State v. Medrano*, No. 13-19740, 2015 WL 567922 (Iowa Ct. App. Feb. 11, 2015) is distinguishable. There, the officer relied on stale information from a citizen informant to effectuate the stop and had no identifying information about the operator of the vehicle.

In reaching this conclusion, we have considered the following quotation in *Vance*, cited by Saffold:

> "If an officer comes upon information suggesting that the assumption [that the driver is the owner] is not valid in a particular case, for example that the vehicle's driver appears to be much older, much younger, *or of a different gender than the vehicle's registered owner*, *reasonable suspicion would*, *of course*, *dissipate*. There would simply be no reason to think that the nonowner driver had a revoked [or suspended] license."

790 N.W.2d at 782 (emphasis added) (quoting *State v. Newer*, 742 N.W.2d 923, 926 (Wisc. Ct. App. 2007). This language does not alter our conclusion. As the court stated, an officer should be allowed to infer the vehicle owner is also the driver "absent any evidence to the contrary." *Id.* at 781. Here, there was no evidence to the contrary until the officer had completed the stop and was in the process of verifying the driver's information. Accordingly, the caveat extracted from *Newer* is inapplicable.

In any event, assuming the deputy learned the driver of the vehicle was not the owner before he initiated questioning, "there arose no requirement that he treat the defendant as if he had never seen him." *State v. Jackson*, 315 N.W.2d 766, 767 (Iowa 1982) ("Notwithstanding the fact that a mistake concerning the license plates led to the defendant's stop there was nothing illegal about the fact that, once he was stopped and exonerated, he was asked to display his operator's license."). He could ask Saffold for his license, as he did, and he could take action on learning Saffold's license was suspended and Saffold showed signs of intoxication. *See State v. Knight*, No. 13-0230, 2014 WL

---

*Id.* at *1-3. Here, in contrast, the deputy knew the owner of the vehicle had a barred license and presumed the owner was the driver.

468217, at *3 (Iowa Ct. App. Feb. 5, 2014) ("Even assuming the deputy could do no more than tell the driver why he had made the stop and then allow him to be on his way, once the deputy smelled alcohol and saw Knight's eyes were bloodshot and watery during that conversation, the deputy developed reasonable suspicion to launch an investigation into possible drunk driving. An investigative detention can grow out of a traffic stop so long as the officer has reasonable suspicion of criminal activity to expand his investigation, even if his suspicions are unrelated to the traffic offense that served as the basis of the stop."); *State v. Ross*, No. 01-1840, 2003 WL 118334, at *2 (Iowa Ct. App. Jan. 15, 2003) ("[N]otwithstanding the fact that a mistake concerning the license plates led to Ross's stop there was nothing illegal about the officer, once the vehicle was stopped, speaking with Ross to investigate further regarding the validity of the temporary plate. It was during this further investigation the officer noticed the smell of alcohol which led to Ross's arrest and conviction for OWI.").

In sum, the deputy had reasonable suspicion to make the stop and reasonable suspicion to expand the stop. Because the stop did not violate Saffold's constitutional rights to be free from unreasonable searches and seizures, we affirm the district court's denial of Saffold's motion to suppress.

**AFFIRMED.**