# IN THE COURT OF APPEALS OF IOWA

No. 21-1775
Filed March 8, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DANA LEE DESPENAS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, District Associate Judge.

A defendant appeals the denial of his motion to suppress evidence of a traffic stop. **AFFIRMED.**

Jesse A. Macro Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant.

Brenna Bird, Attorney General, and Kyle Hanson, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Schumacher and Chicchelly, JJ.

**TABOR, Presiding Judge.**



"It's hard to see from this angle on the camera," Cerro Gordo County deputy Zachary Scott acknowledged at the suppression hearing. But Scott testified that he saw a vehicle traveling north in the southbound lanes of Highway 65. Scott made that observation from one-third of a mile away. And in dark, blizzard conditions. By the time Scott caught up, the vehicle was in the correct lane. Still believing he had probable cause for a traffic stop, Scott signaled the vehicle to pull over. After coming face-to-face with the truck's driver—Dana Despenas—Scott suspected that he was intoxicated. A blood alcohol test confirmed that suspicion.

Despenas challenged the stop and sought suppression of the test results. After reviewing Scott's dashboard video and considering his testimony, the district court denied the motion to suppress. The court decided that the deputy had probable cause for the stop under Iowa Code sections 321.297 and

321.311(1)(b) (2021).[1]  On appeal, Despenas argues the video does not show him driving in the wrong lanes.  And he questions the deputy's ability to see his truck given the distance and poor visibility.

In our de novo review, we find the dashboard video neither supports nor contradicts Scott's testimony.  And like Despenas, we recognize the conditions detracted from the deputy's ability to see a traffic violation.  But, at worst, the deputy made a reasonable mistake of fact in stopping Despenas for driving in the wrong lanes.  Thus, the court properly denied the motion to suppress, and we affirm the conviction.

## I. Facts and Prior Proceedings

Working the midnight shift, Deputy Scott was parked on a farm drive south of Mason City.  It was a snowy January night.  Despite the blizzard, he spotted a vehicle turn off the eastbound exit from Highway 18[2] into the southbound lanes of Highway 65, but traveling north.  Scott was parked about one-third of a mile away from the exit.[3]  "Once I observed this, I began traveling northbound and observed that I could see that his tail lights were passing behind the median signs and well left of where a vehicle would be traveling northbound over the bridge."

But Scott conceded that distance was an issue: "He gets quite a ways ahead of me after I pulled out of the farm drive."  Indeed, the vehicle disappeared

---

[1] Iowa Code section 321.297 prohibits motorists from driving to the left of the center line on a four-lane highway.  And section 321.311(1)(b) requires drivers who are making a left turn to "depart from the intersection to the right of the center line of the roadway being entered."

[2] Locals call this highway the Avenue of the Saints.

[3] Scott's patrol car was facing west while the ramp was to the north.  But on cross-examination Scott testified that he could see the vehicle turn from that angle.

from view on the dashboard camera after about ten seconds. When it came back into view—fifteen seconds later—it was no longer on the wrong side of the road.

Once Scott caught up to the vehicle, he signaled for the driver to pull over. Approaching the stopped truck, Scott greeted the driver, Despenas, and told him "I stopped you because you were on the wrong side of the median when you came off the Avenue." A slurring Despenas responded: "Uh yeah, I was sliding. It was slippery." Despenas also attributed his poor driving to texting his wife. Later Despenas denied driving on the wrong side of the road.

Not only did Despenas have slurred speech, the deputy noticed "bloodshot watery eyes" and "a strong odor of an alcoholic beverage coming from him." Scott asked Despenas to perform field sobriety tests and to take a preliminary breath test. He refused. Scott then obtained a search warrant to test Despenas's blood. The test showed Despenas's blood alcohol content was .252. The State charged Despenas with operating while intoxicated (OWI), third or subsequent offense.

Before trial, Despenas moved to suppress those test results, arguing the stop violated his Fourth Amendment rights under the United States Constitution. He claimed that Scott had no reason to stop him because he did not drive on the wrong side of the road. The State resisted, contending the test results were admissible under the Fourth Amendment and article I, section 8 of the Iowa Constitution. The State asserted that Scott's observations of Despenas's driving could be "verified by his dashboard camera" and were corroborated by Despenas's admission to "sliding" when Scott confronted him with the reason for the stop.

Scott was the only witness at the suppression hearing. Both the State and defense asked him about his dash cam video and still photos captured from the

footage. Scott was frank about the limitations of those exhibits, admitting they did not definitively show the truck's taillights "in the southbound lane but going northbound." Yet Scott insisted that he was "able to observe it better in person." He testified that his "video is very grainy and it's an older camera and it's just not as good as human eyes."

The district court denied the suppression motion, finding Scott's observations supported the stop. After losing his motion, Despenas chose a bench trial and stipulated to the minutes of testimony. The court found him guilty as charged. He now appeals.

## II. Analysis

Despenas argues that the district court "erroneously concluded there was probable cause or reasonable suspicion" to support the traffic stop. And the stop "violated . . . Despenas'[s] Fourth Amendment Constitutional rights . . . as well as Article I, Section 8 of the Iowa Constitution."[4]

Because the motion to suppress raised constitutional concerns, our review is de novo. *See State v. Hauge*, 973 N.W.2d 453, 458 (Iowa 2022). This review requires "an independent evaluation of the totality of the circumstances as shown by the record." *State v. Backes*, 601 N.W.2d 374, 375 (Iowa Ct. App. 1999). We

---

[4] Despenas only invoked the federal constitution in his motion; it was the State that cited the Iowa Constitution in its resistance. And the district court did not specify which search-and-seizure provision it was analyzing. But the State does not contest error preservation. And Despenas does not ask us to apply a different standard under our state constitution from its federal counterpart. So we analyze his argument under federal substantive standards (while reserving the right to apply those standards in a "fashion different from federal precedent"). *See State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) (citing *State v. Tyler*, 830 N.W.2d 288, 291–92 (Iowa 2013)).

may defer to the district court's factual findings but are not bound by them. *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007). And when it comes to video evidence, "we are equally as capable as the trial court" in weighing credibility. *State v. Akers*, No. 17-0577, 2018 WL 1182616, at *2 (Iowa Ct. App. Mar. 7, 2018) (citation and quotation marks omitted).

No question, the traffic stop was a seizure. *Tyler*, 830 N.W.2d at 292. And seizures generally require a warrant. *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). But traffic stops fit an exception if officers "have probable cause or reasonable suspicion to believe that the motorist violated a traffic law." *State v. Brown*, 930 N.W.2d 840, 845 (Iowa 2019).[5] That is, if the motorist committed a traffic violation and the officer saw it, the traffic stop is constitutional under either standard. *Id.* at 855. The State bears the burden of proving a basis for the stop by a preponderance of the evidence. *Tyler*, 830 N.W.2d at 293.

Despenas contends that the district court was wrong in finding the deputy had probable cause to believe he violated sections 321.297 and 321.311(1)(b). He claims the State presented "no credible evidence" that he drove north in the southbound lanes of Highway 65. The State defends the suppression ruling.

---

[5] The standard for assessing the validity of a traffic stop depends on its purpose. *Tyler*, 830 N.W.2d at 293. We judge a stop under reasonable suspicion when its purpose "is to investigate crime." *Id.* And we judge under probable cause when its purpose "is to seize someone who has already committed a crime." *Id.*

These purposes are not mutually exclusive. But this distinction is important because reasonable suspicion "is a much more nebulous concept, and a standard that may or may not be appropriate to apply to smaller offenses such as traffic violations." *Id.* at 292. Because Scott's purpose in stopping Despenas was to cite him for driving on the wrong side of the road, we look for probable cause.

Both sides grapple with the value of the deputy's dashboard video. Despenas claims the footage "at no time" shows him driving in the wrong lane and instead shows him "driving on the correct side of the road." Despenas also asserts the video depicts the dark and snowy conditions that night and the distance between Scott and his truck. He contends these factors throw the credibility of Scott's observations into question.

In response, the State contends that Scott's "unequivocal testimony" that he saw Despenas drive on the wrong side of the road justifies the stop. And the State asserts that "the district court acted within bounds to interpret the video in line with the deputy's description of his observations."[6]

Like the parties, we must address the role of the dash cam video. Granted, sometimes a video can "speak for itself." *See Scott v. Harris*, 550 U.S. 372, 378 n.5 (2007). But here, the dash cam footage speaks in riddles. *See State v. Dexter*, No. 10-1319, 2011 WL 3925478, at *3 (Iowa Ct. App. Sept. 8, 2011). Only the first ten seconds allegedly show Despenas on the wrong side of the highway. As his truck moves father away from the camera, the parallel lanes seem to converge at their vanishing point.[7] Given the distance and distorting perspective—along with the snowy, dark conditions and grainy footage—we cannot discern Despenas's location from the video. In other words, the video neither confirms nor contradicts

---

[6] The State also argues that Despenas's "tacit admission"—captured by him first saying, "[u]h, yeah" when Scott accused him of being on the wrong side of the road—confirms the violation. We are unpersuaded that those two words were a reliable admission. Despenas later denied, again and again, that he had been driving on the wrong side of the highway.

[7] This phenomenon occurs when the distance reaches "a point at which a group of receding parallel lines seems to meet when represented in a linear perspective." *Vanishing Point*, *Webster's Third New International Dictionary* 2523 (2002).

Scott's testimony. But video evidence is only one factor we evaluate. *State v. Mohr*, No. 19-0070, 2020 WL 564907, at *2 (Iowa Ct. App. Feb. 5, 2020).

Without video assistance, we move to the deputy's assertion that he could see the vehicle better with his "naked eye." We don't dismiss that possibility. Indeed, we have said, "[a]n officer using his naked eye may well be in a better position than we are, watching [video] from a dashboard camera, to evaluate" whether a motorist has violated a traffic law. *Dexter*, 2011 WL 3925478, at *3. But our confidence in an officer's observations is determined by the totality of circumstances. *See, e.g., State v. Simmons*, No. 21-1344, 2022 WL 3068463, at *4 (Iowa Ct. App. Aug. 3, 2022) (finding officer's body-camera commentary corroborated his testimony); *State v. Ripperger*, No. 14-2108, 2016 WL 146525, at *2–*3 (Iowa Ct. App. Jan. 13, 2016) (finding neither video nor officer's testimony provided sufficient weight to support traffic stop); *State v. Ballangee*, No. 11-1464, 2012 WL 2407693, at *4 (Iowa Ct. App. 2012) (noting that clear weather, lack of traffic, and officer's correct observation that vehicle had no front license plate "convinced [us that] his naked eye was in a better position").

As described, conditions were less than ideal the night of the stop. And the deputy did not have a prime vantage point for his observations. Yet the district court believed his testimony. "While we are not bound by these determinations, we give deference to the credibility determinations by the district court." *State v. Lane*, 726 N.W.2d 371, 379 (Iowa 2007). But today we need not test the depth of our deference. The State provides us with another option.

The State contends that even if Scott misperceived Despenas's position on the highway, that mistake was understandable.[8] In Iowa, "reasonable suspicion or probable cause do not evaporate when based on an officer's objectively reasonable mistake of fact." *State v. Brown*, No. 18-0747, 2019 WL 1933997, at *3 n.3 (Iowa Ct. App. May 1, 2019) (citing *State v. Lloyd*, 701 N.W.2d 678, 681 (Iowa 2005)). We may uphold the stop so long as there is no evidence the officer knew "the true state of facts." *Id.* (citation omitted). We allow this safe harbor for law enforcement because "[t]o be reasonable is not to be perfect." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (explaining Fourth Amendment allows for some mistakes by police).

Without dispute, Scott would have been justified in stopping Despenas for driving on the wrong side of the road. So the only question is whether a misperception of the truck's location was objectively reasonable. On this question, Scott's dashboard video speaks loud and clear. Given the darky and snowy night, "it is certainly understandable" that Scott could have misperceived what side of the road the truck was on. *Lloyd*, 701 N.W.2d at 681–82 (finding officer's mistake of fact objectively reasonable because "[i]t was dark at the time of the stop"); *see also State v. Kinkead*, 570 N.W.2d 97, 101 (Iowa 1997) (upholding stop despite officer's mistaken belief that muffler was too noisy).

Assuming, without deciding, that Scott was mistaken in his belief that Despenas was driving north in the southbound lanes of Highway 65, we decline to reverse the suppression ruling. Any mistake of fact was objectively reasonable

---

[8] Despite filing a reply brief, Despenas did not respond to this alternative argument advanced by the State in its appellee's brief.

given the conditions that night. Had the facts been as the deputy believed, he would have had probable cause to stop Despenas for violating Iowa Code sections 321.297 and 321.311(1)(b). *See State v. Lansman*, No. 19-0537, 2020 WL 1054571, at *3 (Iowa Ct. App. Mar. 4, 2020). Because the stop was legal, the evidence of intoxication was admissible. We thus affirm his conviction.

**AFFIRMED.**