**IN THE COURT OF APPEALS OF IOWA**

No. 14-0948
Filed May 20, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**CASEY JOE RISIUS,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Rebecca Goodgame Ebinger, Judge.

Casey Joe Risius challenges the district court's denial of a motion to suppress. **AFFIRMED.**

Nancy L. Pietz of Pietz Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Tyler J. Buller, Assistant Attorney General, John P. Sarcone, County Attorney, and Stephan K. Bayens, Assistant County Attorney, for appellee.

Heard by Vogel, P.J., and Potterfield and Mullins, JJ.

**POTTERFIELD, J.**

Casey Joe Risius was searched during a traffic stop, and the police officer discovered marijuana. In a subsequent search of the vehicle, an officer found methamphetamine. Risius moved to suppress the evidence, challenging the constitutionality of the traffic stop and searches under the Fourth Amendment of the United States Constitution. Bound by existing federal precedent, and in light of the district court's credibility determinations, we affirm.

## I. Background Facts and Proceedings.

On April 4, 2013, at about 9:30 p.m., Risius—who was driving a black Jeep Grand Cherokee—was pulled over by Des Moines Police Officer Shawn Herman (driver of the patrol car) and Officer Benjamin Carter (passenger) for an improperly illuminated rear license plate. When the officers approached the stopped vehicle (Officer Herman approaching the driver's side of the Jeep and Officer Carter approaching the passenger's side), they shone their flashlights in the Jeep and asked Risius to step out. Officer Carter opened the passenger door as Risius stepped out of the car. Officer Herman asked Risius if he had anything illegal and directed Risius to face the Jeep with his hands behind his head. He again asked Risius if he had anything illegal on him and "do you mind if I check."[1] Risius's response is inaudible on the recording. While frisking Risius, Officer Herman located a small plastic bag of marijuana. Officer Carter then searched the vehicle and located a small wrapped package in the center

---

[1] We have viewed the DVD recording from the patrol car's dash camera, admitted into evidence at the suppression hearing, and find it inconclusive on the factual issues. Officer Carter stepped in front of the patrol car at the moment Officer Herman asked Risius this question, blocking the camera's view.

console/emergency brake area. The package in the console contained marijuana and methamphetamine. Risius was read his *Miranda* rights[2] and agreed to speak with officers. He admitted the marijuana and methamphetamine were his but claimed they were for his personal use.

Risius was subsequently charged with possession with intent to deliver (methamphetamine) and possession (marijuana). He filed a motion to suppress the items found during the search of his person and the Jeep, contending the vehicle stop was not reasonable under the Fourth Amendment and he had not consented to the search of his person or the vehicle.

A hearing was held at which Risius and Officers Carter and Herman testified. Following that hearing, the district court made a specific finding that Risius's testimony regarding consent was not credible. The court found the traffic stop was reasonable pursuant to Iowa Code section 321.388 (2013), Risius consented to the search of his person, and the search of the vehicle was reasonable as a result of the marijuana found on Risius. The district court denied the motion to suppress.

After a stipulated trial on the minutes, Risius was found guilty of the offense of possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(6).[3] He now appeals.

**II. Standard of Review.**

Risius asserts his constitutional rights to be free from an unreasonable

---

[2] *See Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).
[3] The charge of possession of marijuana, Count II, was dismissed at the time of sentencing.

search and seizure were violated.[4]  We review constitutional issues de novo. *State v. Tyler*, 830 N.W.2d 288, 291 (Iowa 2013).  "A de novo review constitutes an independent evaluation of the totality of the circumstances as shown by the entire record."  *Id.* (citation and internal quotation marks omitted).  "We give deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses, but we are not bound by such findings." *Id.* (citation, alterations, and internal quotation marks omitted).

**III. Discussion.**

"'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'"  *State v. Pals*, 805 N.W.2d 767, 773 (Iowa 2011) (quoting *Whren v. United States*, 517 U.S. 806, 810 (1996)).  "When a peace officer observes a violation of our traffic laws, however minor, the officer has probable cause to stop a motorist."  *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004); *see also United States v. Mendoza*, 677 F.3d 822, 827 (8th Cir. 2012).  However, the State bears the burden of proving by a preponderance of the evidence that the officer had probable cause to stop the motorist.  *State v. Louwrens*, 792 N.W.2d 649, 651 (Iowa 2010).  If the State is unable to meet its burden, all evidence obtained at the stop must be suppressed.  *Id.* at 651–52.

---

[4] While Risius argues his constitutional rights under the Iowa Constitution were violated, this claim was not made below, and thus, we do not address it.  *See State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) ("Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal.").  Only the federal constitutional right was raised below, and our discussion is thus limited to whether Risius's Fourth Amendment rights were violated.

On appeal, Risius contends the stop of his vehicle was pretextual and that the officers were "on a fishing expedition." However, our supreme court has recently stated,

> "When a peace officer observes a traffic offense, however minor, the officer has probable cause to stop the driver of the vehicle." *State v. Mitchell*, 498 N.W.2d 691, 693 (Iowa 1993). A traffic violation therefore also establishes reasonable suspicion. *See Alabama v. White*, 496 U.S. 325, 330 (1990) ("Reasonable suspicion is a less demanding standard than probable cause . . . ."). "The motivation of the officer stopping the vehicle is not controlling in determining whether reasonable suspicion existed. The officer is therefore not bound by his real reasons for the stop." *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002) (citation omitted).

*State v. Harrison*, 846 N.W.2d 362, 365-66 (Iowa 2014); *see also Pals*, 805 N.W.2d at 773 ("'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.'" (citation omitted)).

Thus, the central issue here is whether these officers observed a traffic offense. In this determination, we "give considerable deference to the trial court's findings regarding the credibility of the witnesses," but we will not be "bound by them." *See Tague*, 676 N.W.2d at 201; *accord Tyler*, 830 N.W.2d at 293. Upon our de novo review of the totality of the circumstances, and giving deference to the district court's credibility findings, we affirm the district court's finding the officers had probable cause to stop Risius's vehicle.

Iowa Code section 321.388 requires:

Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of fifty feet to the rear. When the rear registration plate is illuminated by an electric lamp other than the required rear lamp, the two lamps shall be turned on

or off only by the same control switch at all times when headlamps are lighted.

"This code section requires illumination sufficient to render the license plate clearly legible." *Tyler*, 830 N.W.2d at 295. And as more recently stated, "the statute may be violated if there is no illumination of the license plate at all from a white light or if the illumination, though present, is so weak that the license plate is not clearly legible from a distance of fifty feet." *State v. Lyon*, ___ N.W.2d ___, ___, 2015 WL 1740508, at *6 (Iowa 2015).

Officer Carter testified that the Jeep came to his attention because "the registration lamps were not properly lit. When I say not properly lit, they were not visible 50 feet to the rear of the vehicle." He testified that he could read the plate from twenty to thirty feet back, but he was not able to read it when the patrol car was "approximately two-and-a-half car lengths" behind the Jeep. He testified that after activating the emergency lights on the patrol car, he observed the driver of the Jeep "was looking towards the center console. His shoulders were dropping and his head was dropping which is consistent with, in my training and experience, hiding something or concealing an item." Officer Carter stated that because of the driver's movements and failure to stop immediately, "I want to make sure he's not possessing a weapon that's going to hurt me during the traffic stop and the interaction I have with him." Officer Carter testified he approached the passenger side of the Jeep and shined his flashlight in the windows. He stated he was not able to overhear Officer Herman's conversation with Risius. The officer stated he checked the rear registration lamps of the Jeep: "I actually bent over and looked underneath at the two lights that shine down onto the plate,

and I don't recall specifically how they looked. They weren't in good working condition, I can tell you that." Officer Carter testified that he conducted the vehicle search and located a "small, wrapped package . . . it's almost like Saran Wrap, and it was in the center emergency brake, just underneath the—the rubber gasket."

On cross examination, Officer Carter was asked when they decided to pull the Jeep over, and he responded, "It would have been when I saw the violation on Capitol." The following testimony was given:

> Q. So based upon this testimony, you really can't say how far behind you were from Mr. Risius when you decided to pull him over? A. I can only tell you exactly how far I was behind him when I observed the violation because at that point that's important to me because I need probable cause to stop a vehicle, so I exactly know those facts.
> Q. And when you determined there was probable cause to pull over, how far behind were you? A. About 20 to 30 feet.
> Q. Did you not state on direct examination at 20 to 30 feet you could read the plate? A. Once he got between that distance, yes. So between 50 feet and the 20 to 30 feet is when I observed the violation.

Officer Herman testified they first noticed the Jeep in the "16 or 1700 block of Capitol" and "observed that the registration lamp was either not working or not bright enough to be seen from 50 feet back." He stated the officers followed the vehicle as it turned north on 18th Street then east on Hubbell. Officer Herman testified they stopped the Jeep "[b]ecause its registration lamp was not up to code." He testified further that after turning on the patrol car emergency lights, the Jeep "rolled for roughly one city block and then stopped," and while the car was rolling, the driver "was making furtive movements—movements toward the center of the vehicle." When asked to explain the movements, Officer Herman

stated, "He was bending over toward what I thought was the center console with both hands down looking down while his vehicle was slowly rolling forward." Because of the driver's movements, Officer Herman testified he asked Risius to exit the Jeep. He stated that at that time he had "safety" concerns, which were "slightly increased due to the furtive movement and the length of time it took— took the vehicle to stop." His testimony continued:

> A. —in this particular case I had him step out and turn and face away from me.
> Q. Why did you do that? A. Because of the furtive movement, it made me feel more threatened to the point where he might have a weapon, and that's just a—it's what we do for officer's—officer safety because when they're facing away from us, they're less of a danger.
> Q. Once you had Mr. Risius face away from you, did you ask him whether he had anything illegal on his person? A. I can't— can't say verbatim, again not seeing the video, but I would say 99 percent of the time I would ask him if you have anything illegal, any drugs, knives, guns, bazookas, you kind of rattle off a—a list of things.
> Q. At that time given your observations, do you understand what the limitations are with regards to a pat-down search versus a more exhaustive search? A. Yep.
> Q. What are your limitations? A. Initially I would have had just a *Terry* stop, a *Terry* search,[5] which would have been a pat strictly for weapons outside of pockets, waistline, legs, things of that nature. I asked consent to search so I could do a more in-depth search of the Defendant.
> Q. Did you ask the Defendant for permission to search his person? A. Yes.
> Q. What was his response? A. Would have had to have been yes.
>      . . . .

---

[5] *Terry v. Ohio*, 392 U.S. 1, 27 (1968) ("Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.").

Q. To the best of your recollection, did the Defendant make a verbal response to your request? A. Yes.

Q. And what was the nature of that verbal response? A. Well, it would have had to have been yes.

Q. Why do you say that? A. Because we always ensure that the person gives a verbal—you know, they can't just nod their head. They have to say yes. I would have asked him for consent to search his person, and he would have said yes or that's fine, something of that nature.

On cross-examination, Officer Herman acknowledged that he was "probably running [the Jeep's] license and then probably running the register owner" of the Jeep when the officers decided to stop the vehicle.[6] He also acknowledged that he had testified at his deposition, "At some point when we saw the car, one or both of us said, you know, this looks like a good car. I mean, that's when we decided we would find the violation to stop it." Defense counsel asked, "You didn't say, we decided to stop the car because we saw the violation, did you?" Officer Herman responded, "No."

Risius testified that after the patrol car emergency lights were activated, he started to pull over "and reached over to grab the registration and insurance papers out of the console . . . because that's normally what a police officer wants when they pull you over." He testified that the officer did not ask for those documents but "just told me to get out of the car." He stated he complied and did what the officer asked, turned around and placed his hands on the car. Risius testified that the officer "asked if I had any drugs on me, and I told him no"—he testified he indicated "no" by shaking his head. Risius stated further that the

---

[6] Officer Carter was asked if they pulled Risius over because he had called dispatch and checked on Risius's criminal history. Officer Carter stated, "That is not true." When asked if Officer Herman did, Carter stated, "I cannot speak for him, but I don't believe so."

officer asked if he could search the vehicle "and I told him no . . . [b]y shaking my head."

The district court denied the motion to suppress, writing in part:

After the car stopped, Officer Carter approached the passenger's side and Officer Herman approached the driver's side of the car. Defendant exited the vehicle. Officer Herman asked if Defendant had anything illegal on him. Defendant responded negatively. Officer Herman asked if he could check and Defendant responded positively. During the subsequent search, Officer Herman located a small baggie of marijuana. Officer Carter searched the car.

. . . .

Defendant alleges that there were insufficient grounds to support the traffic stop in question. The Court disagrees. Having considered the testimony of the officers and the exhibits offered, the Court concludes the stop was objectively reasonable. . . . Officer Carter testified he could not see the license plate on Defendant's car from fifty feet away as he was driving on East Capitol Street. Officer Herman also testified that the registration lamp was not bright enough for the license plate to be seen from fifty feet back at that location. The Court finds this testimony credible. Nothing in the video or photographic evidence undermines the officer's testimony as to their observations while driving on East Capitol Street. Having observed a traffic violation, the officers had probable cause to conduct a traffic stop. *See United States v. Long*, 320 F.3d 795, 799 (8th Cir. 2003) ("Any traffic stop is constitutional . . . so long as the officer had probable cause to believe that a traffic violation actually occurred."). As such, the initial traffic stop did not violate the Fourth Amendment.

**Removal and Search**

When an officer approaches a car during a traffic stop, he or she is facing a hazardous situation. *Michigan v. Long*, 463 U.S. 1032, 1049 (1983). Concern for officer safety is therefore a significant interest. "[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977); *see also United States v. Stoltz*, 683 F.3d 934, 938 (8th Cir. 2012) (noting this principle of law "is well settled").

Officer [H]erman testified that he asked Defendant to step out of the car. He testified that his concerns for his safety were heightened because of his observations of Defendant's movements, and the Court finds this testimony credible. Defendant testified that he was told to get out of the car. Although a request to

exit the car is not audible on the recording of the traffic stop, the video shows Defendant opening his own door and stepping out of the vehicle under his own power. . . . The Court finds this minimal additional intrusion was reasonable and did not constitute a violation of his Fourth Amendment rights.

Defendant also challenges the search of his person and of his car. Defendant contends he did not consent to the search of his person or to the search of his car.[footnote omitted] Consent is a well-established exception to the warrant requirement of the Fourth Amendment. *Schneckloth v. Bustamante*, 412 U.S. 218, 219 (1973) (citations omitted). Consent may be granted by "gestures and non-verbal conduct." *State v. Reinier*, 628 N.W.2d 460, 465 (Iowa 2001) (citations omitted).

The Court finds Defendant consented to the search of his person. Officer Herman testified he asked Defendant for consent to search his person and that Defendant would have had to have given a verbal "yes" for him to have conducted the search of Defendant's person. Defendant contends he shook his head to indicate a negative response to the question. The video corroborates Officer Herman's testimony and undermines Defendant's. Officer Herman's request for consent to search is clearly audible. No head movement on the part of Defendant is visible in any way, and the view of his head at this point of the video is unobstructed. Officer Herman then begins to search the exterior of Defendant's body. Defendant does not recoil from his touch and continues to appear to respond to Officer Herman's questions. Defendant's responses are not audible on the recording. The Court had the opportunity to listen to Defendant's voice. Defendant is quite soft spoken. During the course of the suppression hearing the Court had to ask Defendant to speak up. The court reporter separately had to confirm Defendant's answers due to his soft speech. The Court finds Defendant consented to the search of his person. As such, the search of his person did not violate the Fourth Amendment.

The Court finds Defendant's claim to have not consented to the search of the car to be irrelevant.[7] Neither officer testified they requested consent to search the vehicle. Both officers testified the automobile search was conducted after the marijuana was found on Defendant's person. "The Supreme Court has recognized a 'specifically established and well-delineated' exception to the warrant requirement for searches of automobiles and their contents." *State v. Allensworth*, 748 N.W.2d 789, 792 (Iowa 2008) (quoting *California v. Acevedo*, 500 U.S. 565, 581 (1991)). When the automobile exception is implicated, officers may search a

---

[7] In a footnote, the district court finds Risius's testimony that he responded negatively by shaking his head was not credible.

vehicle without a warrant if they have probable cause to believe the vehicle will contain evidence of a crime. *Id.* Once the officers found drugs on Defendant's person, they had probable cause to search the entire vehicle without a warrant. *United States v. Webster*, 625 F.3d 439, 445 (8th Cir. 2010); *see also United States v. Baker*, 719 F.3d 313, 319 (4th Cir. 2013) (finding probable cause to believe contraband will likely be found in a vehicle "when a police officer lawfully searches a vehicle's recent occupant and finds contraband on his person").

Alternatively, the officers had probable cause to arrest Defendant for possessing a controlled substance after Officer Herman found the marijuana. *See* Iowa Code § 124.401(5). A police officer "may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Arizona v. Gant*, 566 U.S. 332, 351 (2009).

Risius's other contentions—that the search was improperly expanded, and he did not give consent to the search of his person—fail as well. First, because a stop based upon an observed traffic offense—even if some other motivation exists—is not unreasonable. *See Harrison*, 846 N.W.2d at 365-66. Second, "once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures." *Mimms*, 434 U.S. at 111 n.6.

In addition, we find no reason to set aside the district court's credibility determinations or its finding that Risius gave consent to a search of his person. A search based on consent is not unlawful. *Schneckloth*, 412 U.S. at 219, 225; *see also Reinier*, 628 N.W.2d at 464-65 ("One well-established exception to the warrant requirement is a search conducted by consent."). And, finally, after finding a controlled substance on Risius's person, the search of the vehicle was not unreasonable. *See State v. Vance*, 790 N.W.2d 775, 789 (Iowa 2010)

("[R]elying on another justification underpinning the search-incident-to-arrest exception, the Court held 'circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle."'" (quoting *Gant*, 566 U.S. at 343-44, quoting *Thorton v. United States*, 541 U.S. 615, 632 (2004))). We affirm the denial of the motion to suppress.

Because Risius's challenge to the sufficiency of the evidence relies upon a reversal of the district court's suppression ruling, we affirm the conviction.

**AFFIRIMED.**