# IN THE COURT OF APPEALS OF IOWA

No. 19-1760
Filed April 27, 2022

**STATE OF IOWA,**
  Plaintiff-Appellee,

**vs.**

**PRINCE G. PAYE,**
  Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kevin Parker, District Associate Judge.

Prince Paye appeals the district court's denial of his motion to suppress evidence. **REVERSED AND REMANDED.**

Martha J. Lucey, State Appellate Defender, Stephan J. Japuntich, Assistant Appellate Defender, and Lucee Laursen, Student Legal Intern (until withdrawal), for appellant.

Thomas J. Miller, Attorney General, and Aaron Rogers, Assistant Attorney General, for appellee.

Heard by Tabor, P.J., May, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2022).

**TABOR, Presiding Judge.**



Is that a G, or a D, or an O? A trailer ball hitch impeded Altoona police officer Joshua Starkey's view of a single letter of the rear license plate on the pickup truck that Prince Paye was driving.[2] Believing the impediment was a code violation, the officer pulled Paye over. Paye, who was driving while barred, challenged the legality of the stop. The district court denied his motion to suppress, finding Paye failed to maintain the plate "free from foreign materials and in a condition to be clearly legible," in violation of Iowa Code section 321.38 (2019). Because that statutory interpretation was flawed, we reverse the suppression ruling.

### I.     Facts and Prior Proceedings

Patrolling after midnight, Officer Starkey noticed a pickup in front of him with "a ball on [its] bumper which blocked the license plate." Although Officer Starkey

---

[1] This image was captured by Officer Starkey's dash cam. Starkey stated his headlights were "reflecting off" the license plate, so "the picture doesn't quite do it justice, but it's a fairly accurate representation of what it look[ed] like."
[2] Specifically, Starkey testified, "I couldn't make out what the G was on the license plate. I tried several different ways of what it might look like because the Os the Ds, Gs, things like that. They all look very similar."

couldn't see the entire third letter while following Paye, when he approached on foot, he could see the full plate from the back left side of the pickup.

After Starkey explained why he stopped the pickup and asked for Paye's license, Paye admitted his driving privileges were suspended. Paye also explained that the truck belonged to a female friend. Starkey arrested Paye for driving while barred in violation of Iowa Code section 321.561. The trial information charged Paye as a habitual offender.

Paye moved to suppress evidence obtained during the stop, arguing the seizure violated the Fourth and Fifteenth Amendments to the United States Constitution and article I, section 8 of the Iowa Constitution. The defense argued Starkey had neither probable cause nor reasonable suspicion for the stop because the plate did not violate Iowa Code section 321.38.

At the suppression hearing, Starkey testified he would have had a "clear view" of the plate if the "ball hitch had been removed." So he stopped Paye for an "obstructed plate." When asked about the purpose for keeping license plates unobstructed, the officer testified that it satisfied "a slew of safety concerns. If the vehicle were to be in an accident we need to identify the vehicle from a safe distance." Officer Starkey testified that, in his opinion, equipment such as bicycle racks and wheelchair carriers also would violate section 321.38, thus allowing police to stop vehicles with those attachments.

In arguing for suppression, defense counsel agreed "it's advantageous for officers to see the full plate" but pointed out:

> The problem is there's a lot of lawful ways under the State's interpretation to violate that. They're saying that if you have a lawful attachment to the vehicle that's placed where the manufacturer intended, in accordance with manufacturer specifications, and you have your license plate attached where it's supposed to go, that unless that plate can be read from every single angle that that constitutes a violation.

The district court denied the motion to suppress, finding the officer's inability to see "the entire registration plate due to a trailer ball partially obstructing the letters and numbers" violated section 321.38. To preserve his right to challenge that suppression ruling, Paye agreed to a bench trial on stipulated evidence. The court found Paye guilty as charged. Paye now appeals.

## II.     Scope and Standards of Review

We review constitutional challenges de novo. *See State v. Struve*, 956 N.W.2d 90, 95 (Iowa 2021). But the stop's validity based on the location of the ball hitch is "a question of statutory interpretation that we review for correction of errors at law." *See State v. Harrison*, 846 N.W.2d 362, 365 (Iowa 2014).

## III.    Analysis

Paye challenges the denial of his suppression motion, arguing "neither reasonable suspicion, nor probable cause, existed to justify the stop of his vehicle as there was no traffic violation." Specifically, Paye claims the officer wrongly relied on Iowa Code section 321.38 as grounds for the seizure. That statute provides, in relevant part:

> Every registration plate shall at all times be securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and at a height of not less than twelve inches from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible and shall be

maintained free from foreign materials and in a condition to be clearly legible. . . .

Iowa Code § 321.38.

"A traffic stop is unquestionably a seizure." *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013); *accord Delaware v. Prouse*, 440 U.S. 648, 653 (1979). Generally, the Fourth Amendment and article I, section 8 require a warrant before an officer may seize a person. *See State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). Traffic stops are an exception when the officer has "probable cause or reasonable suspicion to believe that the motorist violated a traffic law." *State v. Brown*, 930 N.W.2d 840, 845 (Iowa 2019). In other words, "[i]f a traffic violation occurred, and the peace officer witnessed it, the State has established probable cause." *Id.* at 855.

> However, the State must bear the burden of proof by a preponderance of the evidence that the officer had probable cause to stop the vehicle. If the State does not meet this burden, all evidence obtained at the stop must be suppressed. The existence of probable cause for a traffic stop is evaluated from the standpoint of an objectively reasonable police officer.

*Id.* (internal citations omitted). Traffic stops raise "the possibility for racial profiling." *Harrison*, 846 N.W.2d at 366 (quoting *Tyler*, 830 N.W.2d at 297 n.4). So we must "carefully review the objective basis for asserted justifications behind traffic stops." *Id.* (quoting *Tyler*, 830 N.W.2d at 297 n.4). And when those justifications fall short, any evidence obtained must be set aside. *Tyler*, 830 N.W.2d at 294–96 (requiring suppression of evidence obtained when officer pulled over driver based on mistaken belief license plate cover was illegal).

Now we must decide if Officer Starkey misinterpreted section 321.38. First, we examine that statute for ambiguity. *State v. Ross*, 941 N.W.2d 341, 346 (Iowa

2020). If none, we stop there, resting on its plain language. *Id.* But if reasonable minds could differ on the statute's meaning, it is ambiguous, and we may rely on principles of statutory construction to resolve that ambiguity. *Id.* In that effort, we must construe all words and phrases "according to the context and the approved usage of the language." Iowa Code § 4.1(38).

The State contends that the phrases "clearly visible" and "clearly legible" in section 321.38 are both unambiguous, requiring the plate be "entirely readable" from all angles.[3] But the State's contention ignores the statute's overall structure. *See Gardin v. Long Beach Mortg. Co.*, 661 N.W.2d 193, 197 (Iowa 2003) ("[W]e must read a statute as a whole" and give the words their "plain and obvious meaning, a sensible and logical construction."(citations omitted)). "When the debate is over a word or phrase, we examine the context in which it is used." *Babka v. Iowa Dep't of Inspections & Appeals*, 967 N.W.2d 344, 355 (Iowa Ct. App. 2021). And the State's blurring of the terms "visible" and "legible" overlooks that backdrop.

Let's discuss those terms in context. "[D]ifferent words in a statute, such as 'visible' and 'legible,' are generally presumed to have different meanings." *People v. Gaytan*, 32 N.E.3d 641, 649 (Ill. 2015); *see also Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 853 (Iowa 2014) ("If the drafters intended . . . two concepts to be

---

[3] In a telling admission, the State's brief acknowledges section 321.38 would be ambiguous if Paye had been hauling a trailer that obstructed his whole license plate instead of having a trailer ball hitch that hid just part of one letter. The State further argues that an interpretation of section 321.38 that prohibits hauling a trailer would conflict with other provisions in chapter 321. *See, e.g.*, Iowa Code §§ 321.105, .123, .166; *see also id.* § 321L.2(1)(a)(1) (allowing person with a disability to order plate for trailer used to transport a wheelchair). Thus, because rules of construction require those provisions to be harmonized, the State contends total obstruction of the plate by a trailer would not violate section 321.38.

coextensive, different words would not have been used.").  And we determine the purpose of a statute primarily from its language.  *Doe v. State*, 943 N.W.2d 608, 613 (Iowa 2020).  In a nutshell, "[t]he words of a governing text are of paramount concern, and what they convey, in their context, is what the text means."  Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56–58 (2012) [hereinafter *Reading Law*] (discussing supremacy-of-text principle).

Here, both sides present differing yet plausible explanations of how this statute does or does not apply to Paye's ball hitch.[4]  So the governing text is ambiguous.  *See State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021).  We must rely on tools of statutory interpretation to determine the meaning of "visible" and "legible" in section 321.38.  *See id.*  And after using those tools, we look to the rule of lenity to give a narrow reading to this criminal statute.  *State v. Nall*, 894 N.W.2d 514, 519 (Iowa 2017).

The drafters used those adjectives to describe two different duties that vehicle owners have when handling their license plates.  The owners must (1) fasten their registration plate securely, horizontally, and at least a foot off the ground so that it is "in a place and position to be clearly visible" and (2) maintain the plate "free from foreign materials and in a condition to be clearly legible."  Iowa

---

[4] In *Gaytan*, the Illinois Supreme Court said:
> The State's interpretation of the statute is certainly one possibility, as it furthers the reasonable goal of ensuring the visibility of license plates.  But it is equally reasonable to conclude that the General Assembly did not intend to put companies who rent trailers out of business and did not intend to further burden the physically disabled by making it illegal for them to use wheelchair and scooter carriers— particularly when the statute says nothing about these matters.

32 N.E.3d at 650–51.

Code § 321.38. As a matter of syntax, the dual duties of fastening and maintaining are separated within the run-on sentence, both introduced by a directive phrase—"shall at all times" and "shall be."

Under that structure, the "clearly visible" mandate is concerned with the durable attributes of the plate's fastening—satisfied if the plate is secure, horizontal, and not too low. Notably, the drafters inserted "and" between the adverbial phrases "in a horizontal position" and "at a height of not less than twelve inches" but not before the phrase "in a place and position to be clearly visible." The legislature's omission of "and" before "in a place and position to be clearly visible" means it is not a freestanding requirement. *See Reading Law*, at 124, 147–51 (discussing conjunctive/disjunctive canon, the omitted-case canon, presumption of consistent usage, and the series-qualifier canon).[5]

Our conclusion is bolstered by the drafters' use of the two words: place *and* position. If they had meant that the plate could not be tucked behind another object, like a ball hitch, one word would have sufficed. *See State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 474 (Iowa 2017) (presuming statutes do not contain superfluous words). Instead, the drafters chose "position," referencing the "horizontal position"

---

[5] Put differently, if we were to ignore a directive phrase, assume an invisible "and", and accept inconsistent word usage, we end up rewriting the statute, transforming it into something like this:

> Every registration plate shall at all times be (1) securely fastened in a horizontal position to the vehicle for which it is issued so as to prevent the plate from swinging and (2) at a height of not less than twelve inches from the ground, measuring from the bottom of the plate, and (3) in a location place and position to be clearly visible and shall be (4) maintained free from foreign materials and (5) in a condition to be clearly legible. . . .

But that wording isn't before us today.

mentioned earlier, "place," relating back to signify the height requirement. *See State v. Paye*, 865 N.W.2d 1, 7 (Iowa 2015) (noting when term appears repeatedly in same statute, it should have same meaning). In other words, the obligation to fasten the plate "in a position and place to be clearly visible" is met if the plate is horizontal and at least a foot off the ground.

By contrast, the "clearly legible" requirement goes to the plate's upkeep. The owner must maintain the plate free from foreign materials and in a "condition" to be "clearly legible." Both "maintain" and "condition" implicate a temporary status. *See Maintain*, American Heritage Dictionary (2d ed. 1985) ("To preserve or keep in a given existing condition, as of efficiency or repair[.]"); *Condition*, American Heritage Dictionary ("The particular mode or state of being of a person or thing[.]").

Looking back, the daylight between the fastening and maintenance requirements becomes clearer. This chart tracks the statute's major iterations:

| Year | Fastening | Maintenance |
|------|-----------|-------------|
| 1907 | . . . [plates] displayed on the back of such motor vehicle in such a manner as to be plainly visible . . . [designating height and width of Arabic numerals]. | |
| 1911 | . . . [plates] . . . conspicuously displayed . . . each securely fastened so as to prevent the same from swinging. | |
| 1919 | . . . [vehicles] shall have conspicuously displayed the number plates . . . each securely fastened so as to prevent the same from swinging | and each so placed that the same shall not become habitually obscured by dust and mud. |
| 1924 | . . . [vehicles] shall have conspicuously displayed the number plates . . . each securely fastened so as to prevent the same from swinging | and each so placed that the same shall not become habitually obscured. |

| 1939 | . . . [plates] shall at all times be securely fastened in a horizontal position . . . so as to prevent the plate from swinging and at a height of not less than twelve inches from the ground, measuring from the bottom of the plate, in a place and position to be clearly visible | and shall be maintained free from foreign materials and in a condition to be clearly legible. |
|------|-----|-----|

*See* Iowa Code § 1571-f (1907); *id.* § 1571-m11 (1911); *id.* § 3065 (1919); *id.* § 4877 (1924); *id.* § 5001.22 (1939).

At the statute's debut, it included only the fastening requirement. But, with time, the plate's maintenance was legislated too. By 1919, the plate needed to be "conspicuously displayed" *and* "not habitually obscured by dust and mud." Iowa Code § 3065 (1919). And these two distinct requirements have persisted in some form ever since.[6]

Beyond section 321.38's forebears, additional contextual clues show that the State misapplies the "clearly visible" and "clearly legible" requirements to Paye's plate. As noted above, the legislature picked different words to describe how the plate is to be fastened and how it is to be maintained. *See State v. Hauan*, 361 N.W.2d 336, 339 (Iowa Ct. App. 1984) ("We will not assume the legislature inserted the words for no reason, and believe it had a purpose in using both 'resist' and 'obstruct.' Each word must mean something different or it is redundant."). On the one hand, the legislature decided the fastened plate must be "clearly visible." The dictionary defines "visible" as "[c]apable of being seen; perceptible to the eye." *Visible*, American Heritage Dictionary. On the other hand, the legislature decided

---

[6] At oral argument, defense counsel made the useful observation that when lawmakers enacted what is essentially the current wording of the statute in 1939, they did not consider the modern practice of police using in-car laptops while on patrol to run instant checks on motorists.

the plate must be maintained so that it is "clearly legible." The dictionary defines "legible" as "[c]apable of being read or deciphered." *Legible*, American Heritage Dictionary. Being able to see the plate and being able to read the plate are two different feats.

In both instances, the legislature added the adverb "clearly."[7] The dictionary definition of "clearly" most apt here is "easily perceptible to the eye." *Clearly*, American Heritage Dictionary. But the State seeks to define "clearly" as "entirely" or without being obstructed "in any manner." That broad definition not only violates the rule of lenity, but it is at odds with a closely related statute.

Section 321.37(3) prohibits placing any frame around or over a plate which does not permit "full view" of all numerals and letters printed on the plate. To that end, obstruction of the county name is prohibited. *See Harrison*, 846 N.W.2d at 363 ("[W]e hold a license plate frame that covers up the county name violates Iowa Code section 321.37(3) and provides a valid basis for a traffic stop.").

If the legislature had wanted the plate to be fastened and maintained so that all numerals and letters were in "full view," it could have said so in section 321.38 as it did in section 321.37(3). *See In re Prop. Seized from Bo Li*, 911 N.W.2d 423, 429 (Iowa 2018) (applying rule of lenity). It did not. And we should not read that language into a criminal statute.[8] *See Sanon v. City of Pella*, 865 N.W.2d 506, 521 (Iowa 2015) (Waterman, J., concurring in part and dissenting in part) ("When the

---

[7] Early versions of the statute used the words "plainly" and "conspicuously" to describe how the plate should be displayed. Both "plain" and "conspicuous" are synonyms of "clear." *See Clear*, Webster's Collegiate Thesaurus (1976).

[8] Section 321.38 is punishable as a scheduled violation carrying a $30 fine. Iowa Code § 805.8A(2)(g). A scheduled violation is a criminal offense, albeit a minor one. *See State v. Frazer*, 402 N.W.2d 446, 448 (Iowa 1987).

legislature selectively places language in one section and avoids it in another, we presume it did so intentionally.").

Speaking of *Harrison*, while its holding is limited to license plate frames under section 321.37(3), we recognize that certain passages also reflect on section 321.38. This paragraph discussing how to "harmonize" related statutes is a prime example:

> Harrison's interpretation would undermine the display requirements for Iowa license plates. Section 321.166(2) expressly required Harrison's license plate to display the name of the county. *See* Iowa Code § 321.166(2). Why permit motorists to cover up information on license plates they are required to display*? Furthermore, Iowa Code sections 321.38 and 321.388 demonstrate that the legislature intended that all information to be displayed on a license plate must remain readable. Iowa Code section 321.38 requires "[e]very registration plate" "to be clearly visible and . . . maintained free from foreign materials and in a condition to be clearly legible."* Iowa Code section 321.388 requires the illumination of "the rear registration plate [to] render it clearly legible from a distance of fifty feet." Taken together, these statutes reinforce our conclusion that covering up the county name on a license plate violates Iowa Code section 321.37(3).

*Harrison*, 846 N.W.2d at 368 (empahsis added).

Yet those reflections in *Harrison* do not dictate the result here. The court's reference to the legislative intent that "all information" must "remain readable" was offered in passing without a deep dive into the language of section 321.38. *Id.* And here all information did remain readable, depending on the viewer's vantage point. In contrast, the frame in *Harrison* "covered up" the information completely. *See id.* at 364. But most importantly, the *Harrison* court was not considering the

statute's application to a ball hitch that partially blocked a single letter of the license plate.[9]

That consideration is before us now. Did the officer make a mistake of law in stopping Paye for a violation of section 321.38? In other words, was Paye's plate properly fastened and properly maintained? Fastening first, the State does not assert that the plate was improperly mounted. It was horizontal, the correct height, and secured. Even if the phrase "in a place and position to be clearly visible" were to convey an independent requirement rather than modifying the two preceding phrases, Paye's plate was easily perceptible to the eye. The officer agreed that just "one part of one letter was blocked by the trailer ball"—otherwise the plate was easily seen. So Paye did not violate the statute's first duty.

That just leaves maintenance. Was the ball hitch a "foreign material"? Was the plate maintained "in a condition to be clearly legible"?[10] As shown in our chart, the phrase "foreign materials" replaced specific references to dust and mud in an early version of the statute. Likewise, our modern cases reflect that same understanding: "foreign materials" are substances like dust, mud, or snow. *See, e.g., State v. Brown*, 930 N.W.2d 840, 915 (Iowa 2019) (Appel, J., dissenting) (denoting dirt as example of a foreign material); *Tyler*, 830 N.W.2d at 295

---

[9] A federal district court relied on *Harrison* in concluding that a bumper-step that obscured a registration sticker violated Iowa Code section 321.38. *United States v. Cade-Gilson*, No. CR14-2035, 2014 WL 4277244, at *5–6 (N.D. Iowa Aug. 29, 2014), *aff'd sub nom. United States v. Gilson*, 654 F. App'x 247 (8th Cir. 2016). We decline to follow that court's reasoning here.

[10] Again, syntax matters. The phrase "in a condition to be clearly legible" follows the word "and"—so the requirement of clear legibility goes only to the plate's condition, not the requirement to keep it free from foreign materials. The State agrees with this premise in its brief, noting the "two imperatives" in that sentence.

(discussing "coat of dust, mud or snow" as examples of foreign materials); *State v. McFadden*, No. 16-1184, 2017 WL 4315047, at *2 (Iowa Ct. App. Sep. 27, 2017) (noting "grime-covered" plate was illegible under section 321.38); *State v. Nguyen*, No. 13-0045, 2013 WL 5498072, at *3 n.2 (Iowa Ct. App. Oct. 2, 2013) (declining to interpret "foreign material" as prior year's validation sticker); *State v. Klinghammer*, No. 09-0577, 2010 WL 200058, at *3 (Iowa Ct. App. Jan. 22, 2010) (holding plate was not "clearly legible" because of snow buildup). Under this reading of section 321.38, a ball hitch would not qualify as a foreign material that motorists must keep their plates free from. *See Gaytan*, 32 N.E.3d at 651 (invoking rule of lenity to conclude that only objects "physically connected or attached to the plate itself" would violate similar statute).

The State tries to distinguish *Gaytan* based on a difference in the wording of the Illinois statute. *See* 625 Ill. Comp. Stat. Ann. 5/3-413 (West 2010) (requiring plate be "maintained in a condition to be clearly legible, free from any materials that would obstruct the visibility of the plate"). In its view, because Iowa's "clearly legible" clause does not inform the "foreign materials" clause, even if the ball hitch is not a foreign material, its presence prevented the plate from being "clearly legible." Trouble is, the State cleaves the phrase "in a condition" from "to be clearly legible," rewriting the statute.

As Paye argues, the "condition" of clear legibility applies to the status of physical plate itself, and the possibility it will become faded, dented, or rusty over

time.[11]  *See generally* Iowa Code § 321.42 (allowing replacement when "pair of plates is lost or becomes illegible"); *see also* Proclamation of Disaster Emergency, §§ 125–127 (Aug. 21, 2020) (suspending replacement fee for license plates "lost, destroyed, or rendered illegible as a result of the derecho").  The officer acknowledged Paye's plate was in good condition, showing no dents or scratches.  Because the ball hitch was not a "foreign material" and did not implicate the plate's physical condition, Paye did not violate the maintenance requirement.

And since Paye's plate was both "clearly visible" as fastened and "clearly legible" as maintained, he did not violate section 321.38.  This conclusion harmonizes related code provisions.  *See Harrison*, 846 N.W.2d at 368.  The legislature listed plate specifications in section 321.166, including the dimensions of the plate and the height of the characters.  Next, section 321.37 governs the display of those plates.  In that provision, the only restriction on placing items "around or over the registration plate" involved the frames discussed in *Harrison*. *See* Iowa Code § 321.37(3).  Section 321.38 provides the "method of attaching" those plates.  Again, that statute contains no express restrictions on separate equipment in the plates' vicinity.[12]  *See id.* § 321.38.  Finally, section 321.388 requires motorists to illuminate the plate with a white light to "render it clearly legible from a distance of fifty feet to the rear."  That lighting requirement does not

---

[11] Circling back to our discussion of word choice, if the legislature had meant "condition" to mean "position" (as in positioned behind a ball hitch) it would have repeated the word "position" from the fastening half of the statute.

[12] As our supreme court recently noted, "Meaning is expressed by omission as well as by inclusion."  *Schmett v. State Objections Panel*, ___ N.W.2d ___, 2022 WL 1122873, at *4 (Iowa 2022) (altered for readability); *see also Reading Law*, at 93 ("[A] matter not covered is to be treated as not covered.").

speak to the question of the minor obstruction posed by the ball hitch here. *See Tyler*, 830 N.W.2d at 295 ("The fifty-foot distance is only relevant when applied to question of adequate illumination.").

We acknowledge the majority of other courts that have addressed a similar issue have concluded that a trailer hitch obscures full view of a license plate. *See, e.g.*, *Parks v. State*, 247 P.3d 857, 860–61 (Wyo. 2011) (collecting cases).[13] But those courts were interpreting their respective statutes. *See, e.g.*, *Worlds v. State*, 762 S.E.2d 829, 828–32 (Ga. Ct. App. 2014) (interpreting Code of Georgia Annotated § 40-2-41, which prohibited any "apparatus" that is "attached to the rear of any motor vehicle" preventing "clear display and legibility of a license plate"). And after thoroughly examining the language used by *our* legislature, we are not persuaded that position is correct. Instead, we follow our Nebraskan neighbors' lead and decline to "bootstrap a holding from statutory language which does not exist." *State v. O'Dell*, No. A-01-1274, 2002 WL 31107578, at *6 (Neb. Ct. App. Sept. 24, 2002).

---

[13] We are reluctant to adopt the *Parks* reasoning that license plates "need to be easily read in order to facilitate law enforcement and ordinary citizens in reporting and investigating hit-and-run accidents, traffic violations, gas-pump drive offs, and other criminal activity." 247 P.3d at 860; *accord State v. Kearns*, No. 1 CA-CR 16-0321, 2017 WL 1365981, at *3 (Az. Ct. App. Apr. 13. 2017). We suspect that if officers can see all but one letter of a license plate, they will know more information such as the color of the vehicle, maybe the model, and its direction of travel. Thus it is doubtful missing one letter is of any consequence in deciding the validity of a traffic stop in those scenarios. But we acknowledge it may be helpful for officers to view all digits and letters to call into dispatch to determine the vehicle's owner and if the owner has a criminal history or outstanding warrants. Such information may also aid officers' safety before approaching the driver.

Bottom line. The legislature is free to criminalize ball hitches.[14] The judiciary is not. Because the officer seized Paye based on a mistake of law, the stop was unjustified. *See Tyler*, 830 N.W.2d at 295–96. The unjustified stop violated Paye's rights as guaranteed by both the Fourth Amendment and article I, section 8, Thus, all evidence obtained by Officer Starkey was inadmissible. So we reverse the ruling denying Paye's motion to suppress and remand for further proceedings consistent with this decision.[15]

**REVERSED AND REMANDED.**

Danilson, S.J., concurs; May, J., dissents.

---

[14] And the enforcement does not end with ball hitches. Recall Officer Starkey's frank admission that under his interpretation police officers could stop any vehicle with a rear-mounted bicycle rack or wheelchair carrier. At oral argument, the State accepted the possibility of widespread violations. We believe "[t]hese consequences reasonably counsel against the broad reading of the statute proposed by the State." *See Gaytan*, 32 N.E.3d at 650.

[15] Paye also claims that his trial counsel was ineffective for not challenging Iowa Code section 321.38 as unconstitutionally vague. We need not reach that challenge after resolving the first issue in Paye's favor. What's more, we could not have decided that issue on direct appeal. *See State v. Tucker*, 959 N.W.2d 140, 154 (Iowa 2021).

**MAY, Judge** (dissenting).

"[A] license plate is the primary means by which police may identify a vehicle and its owner." *State v. Klinghammer*, No. 09-0577, 2010 WL 200058, at *3 (Iowa Ct. App. Jan. 22, 2010). "Therefore, a license plate obscured for any reason, defeats its very function." *Id.* Here we must decide whether an officer was justified in stopping Prince Paye because his license plate was partially obscured by a trailer hitch ball. I believe the stop was justified. I respectfully dissent.

The case centers on Iowa Code section 321.38 (2019). It requires drivers to fasten their license plates "in a place and position to be clearly visible." Iowa Code § 321.38; *accord State v. Harrison*, 846 N.W.2d 362, 368 (Iowa 2014) ("Iowa Code section 321.38 requires '[e]very registration plate' 'to be clearly visible . . . .'" (alteration in original)); *State v. Bush*, No. 10-0711, 2011 WL 2090025, at *1 n.1 (Iowa Ct. App. May 25, 2011) ("Section 321.38 also provides license plates must be 'in a place and position to be clearly visible . . . .'"); *Klinghammer*, 2010 WL 200058, at *3 ("Iowa Code section 321.38 provides in part, 'Every registration plate shall at all times be securely fastened . . . in a place and position to be clearly visible . . . .'"); *State v. Peden*, No. 08-1039, 2009 WL 606236, at *1 (Iowa Ct. App. Mar. 11, 2009) ("Iowa Code section 321.38 requires that all registration plates be 'in a place and position to be clearly visible . . . .'"); *see also State v. Brown*, 2019 WL 1933997, at *3 (Iowa Ct. App. May 1, 2019) (noting Iowa Code section 321.38 "require[s] registration plates to be 'clearly visible'"); *State v. Miller*, No. 02-0965, 2003 WL 22015974, at *1. n.1 (Iowa Ct. App. 2003) (noting section 321.38 requires plates to be "securely fastened . . . in a place and position to be clearly visible").

To decide what this requirement means, we look for the legislature's purpose as "evidenced by the words used in the statute." *Harrison*, 846 N.W.2d at 367 (citation omitted). We generally give a statute's words "their ordinary and usual sense and . . . the meaning commonly attributable to them." *Id.* at 368 (citation omitted). Also, we consider the various portions of Iowa Code chapter 321 "together and try to harmonize them." *Id.* (citation omitted). Above all: when our supreme court has spoken about a provision of Iowa law, those statements bind us. *Beeson v. Phelps*, No. 08-1689, 2009 WL 1886070, at *2 (Iowa Ct. App. July 2, 2009) ("However, dicta or not, we believe the supreme court's clear statements of the law are binding on this court.").

Here the question is whether the "clearly visible" requirement was violated because Paye's license plate was positioned behind a trailer ball that partially hid one of the plate's letters. I think it was. Visible means "capable of being seen." *Visible*, Merriam-Webster, https://www.merriam-webster.com/dictionary/visible (last visited Mar. 6, 2022). And although "clear"—and, therefore, "clearly"—can have different meanings in different contexts, the meaning that fits here is probably: "unhampered by restriction or limitation." *Clear*, Merriam-Webster, https://www.merriam-webster.com/dictionary/clear (last visited Mar. 6, 2022). But if a license plate is hidden behind a trailer ball, the plate cannot be seen. It is not visible, let alone "clearly visible."

Paye suggests that, because the plate was only *partially* hidden, it was still "clearly visible." But when a plate is partially hidden, it is only partially visible—and so it is partially invisible. And I struggle to say we can substitute "partially invisible" or even "partially visible" for the unqualified word "visible," let alone the emphatic

"clearly visible." Also, if the legislature had wanted to permit drivers to hide part of their license plates by displaying them only "partially," the legislature could have said so. *See, e.g.*, Iowa Code § 321.343(3) ("An 'exempt' sign shall be posted only where the tracks have been *partially* removed on either side of the roadway" (emphasis added)).

Paye also points out that his entire license plate *could* be seen by an officer standing right next to his vehicle. In other words, the whole plate *was* visible from a particular angle at a particular (very short) distance. But our court has already rejected similar contentions. In *Miller*, the defendant argued that "the officer was simply too far away to read" his obscured license plate. 2003 WL 22015974, at *1. But we agreed with the State that—unlike some statutes—"Iowa Code section 321.38 does not specify a distance from which the plate must be legible." *Id.* Similarly, in *Peden*, we held that a plate that could be read only "from certain angles" did "not comply with" section 321.38's requirements. 2009 WL 606236, at *1. Again, if the legislature had wanted to limit the "clearly visible" requirement to only certain distances or angles, it could have. *cf.* Iowa Code §§ 321.1(33) (referring to "right angles" when defining the term "intersection"); .388 ("Either the rear lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from *a distance of fifty feet* to the rear" (emphasis added)).

Paye also notes that section 321.38 does not explicitly "proscribe the display of a bumper-mounted trailer ball." This is true. Nor does section 321.38 explicitly proscribe hiding license plates inside the trunk. Nor does section 321.38 list all of the *other* ways that one might prevent a license plate from being "clearly

visible." And the list of possible "cloaking devices," so to speak, is limited only by human imagination. For instance, in his article "How to Make Number Plates Invisible to Cameras," Owen Mason suggests attaching a bicycle rack "in a way that blocks the [license] plate, making it invisible to road cameras."[16] Owen Mason, *How to Make Number Plates Invisible to Cameras*, Family Instructor, (last updated Aug. 29, 2021) https://familyinstructor.com/how-to-make-number-plates-invisible-to-cameras/. But the legislature had no need to catalog all of the possible arrangements that could make license plates "invisible." By requiring plates to be "clearly visible," the legislature prohibited all such arrangements.[17]

Finally, Paye suggests that the supreme court's decision in *Harrison* aids his cause. *See* 846 N.W.2d at 366–69. I think the opposite is true. *Harrison* said that section 321.38 "demonstrate[s] that the legislature intended that all information to be displayed on a license plate must remain readable." *Id.* at 368. And section 321.166(2) requires every license plate to display its "registration plate number." So *Harrison* suggests that section 321.38 "demonstrate[s] that the legislature intended" for the entire "registration plate number" to remain visible[18]—and, therefore, *not* hidden by a trailer ball. *See id.* After all, the *Harrison* court asked, "Why permit motorists to cover up information on license plates they are required

---

[16] Of course, many normally law-abiding people attach bike racks or similar items to their vehicles. I'm sure most of them are *not* purposefully scheming to hide their license plate from police officers, traffic cameras, etc. Regardless of their subjective motives, though, the result is the same: if a bike rack or other item hides their license plate, the plate is not clearly visible.

[17] Or, at least, the statute prohibits all schemes involving the position and placement of the license plate, e.g., placing it behind a bicycle rack or trailer ball.

[18] I agree with the majority that visibility and legibility/readability are not identical concepts. But visibility is an essential prerequisite to legibility/readability.

to display?" *Id.* Allowing drivers to hide this information would frustrate "[a]n important purpose" of our license plate statutes, namely, "allow[ing] police and citizens to identify vehicles." *Id.*; *see Report & Recommendation*, *United States v. Cade-Gilson*, No. CR14-2035, 2014 WL 4277244, at *6 (N.D. Iowa Aug. 29, 2014) (discussing *Harrison* and concluding that "if the license plate is not 'clearly legible' for any reason, it violates § 321.38"), *report and recommendation adopted*, No. 14-CR-2035-LRR, 2014 WL 4843895, at *5 (N.D. Iowa Sept. 29, 2014), *aff'd sub nom. United States v. Gilson*, 654 F. App'x 247 (8th Cir. 2016) (per curiam).

In summary: Based on the statutory language, our court's prior decisions, and especially the supreme court's teachings in *Harrison*, I conclude section 321.38 required Paye to position his license plate so that the entire registration plate number would be "clearly visible." Because part of Paye's registration plate number was hidden behind a trailer ball, Paye violated this requirement. So the officer was justified in stopping Paye, the motion to suppress was properly denied, and Paye's conviction should be affirmed. I respectfully dissent.